UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUNAMERICA HOUSING FUND 1050, A Nevada Limited Partnership,

           Plaintiff,

-against-

PATHWAY OF PONTIAC, INC., a Michigan corporation; PV NORTH LLC, a Michigan limited liability company; and PRESBYTERIAN VILLAGE NORTH, a Michigan corporation,

           Defendants.

Case No. _____

**COMPLAINT**

   Plaintiff SunAmerica Housing Fund 1050, A Nevada Limited Partnership ("SHF 1050" or "Plaintiff"), by and through its attorneys Nixon Peabody LLP, as and for its Complaint against Defendants Pathway of Pontiac, Inc. ("Pathway"), PV North LLC ("PV North") and Presbyterian Village North ("Presbyterian"), alleges as follows:

## NATURE OF THE CASE

   1. Pathway and PV North are co-general partners in the Pontiac ILF Limited Dividend Housing Association Limited Partnership, a Michigan limited partnership formed pursuant to the terms of the Michigan Revised Uniform Limited Partnership Act (the "Partnership"), and they are parties to the Partnership's Amended and Restated Agreement of Limited Partnership, as amended from time to time (the "Partnership Agreement").

   2. SHF 1050 is the limited partner in the Partnership.

   3. The parties entered into the Partnership Agreement in order to acquire, rehabilitate, and operate a multi-family residential building, located in Pontiac, Michigan (the "Apartment Complex") to provide affordable housing to qualified individuals, pursuant to the Low-Income

Housing Tax Credit ("LIHTC") program under Section 42 of the Internal Revenue Code, 26 U.S.C. § 42 (the "Code").

4. The present dispute arises from the efforts of Pathway and PV North, as co-general partners of the Partnership, to improperly attempt to cause the Partnership to transfer the Apartment Complex to their affiliate Presbyterian by purporting to cause or allow Presbyterian to exercise a right of first refusal (the "ROFR") granted to it under the Partnership Agreement.

5. The ROFR was granted to Presbyterian pursuant to a provision of Section 42 of the Code which permits such a ROFR to be granted to a qualified entity for a statutorily defined minimum purchase price.

6. Defendants' attempt to transfer and sell the Apartment Complex by purporting to allow Presbyterian to exercise the ROFR is unlawful because none of the requisite triggering conditions has been satisfied, according to the well-established meaning of a right of first refusal under the common law and the Partnership Agreement.

7. Defendants' efforts are also contrary to the intent and wishes of SHF 1050 which owns 99.99 percent of the interests in the Partnership and thus is the overwhelming majority owner.

8. Defendants have definitively and finally represented their intent to breach their outstanding duties and obligations arising under the Partnership Agreement, by causing a transfer of the Apartment Complex to Presbyterian. Defendants have therefore repudiated the Partnership Agreement, and there is a justiciable controversy concerning the interpretation of a ROFR granted pursuant to Section 42 of the Internal Revenue Code as well as other terms and conditions of the Partnership Agreement governing the parties' relationship.

## JURISDICTION AND VENUE

9. Under 28 U.S.C. § 1331, Plaintiff requests a declaration concerning the legal rights and obligations of the parties arising under Section 42(i)(7) of the Internal Revenue Code, all

related regulations, and the intent of the U.S. Congress, together with the common law of the State of Michigan, incorporated or adopted in Section 42, which constitutes a legal controversy that arises under the laws of the United States. The parties' dispute concerning their respective rights and obligations, which flow directly from Section 42(i)(7), raises a federal question that is genuinely controverted, necessary, and substantial, and it does not alter the federal-state judicial balance.

10. Further, under 28 U.S. § 1340, the parties' dispute about the correct legal interpretation of Section 42(i)(7) of the Internal Revenue Code, and its application to their circumstances, constitutes a dispute arising under an Act of Congress providing for internal revenue.

11. Thus, this Court has subject matter jurisdiction over this matter because the action involves an embedded federal legal question and this action arises under a federal taxation statute. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other claims and causes of action asserted between the parties.

12. In addition, under 28 U.S.C. § 1332, the parties in this matter are completely diverse. Plaintiff is a limited partnership duly formed under the laws of Nevada, with its principal place of business in Los Angeles, California, and none of Plaintiff's partners is domiciled in Michigan. The domicile of Plaintiff's partners is as follows:

(a.) Plaintiff's General Partner is SAFG Retirement Services, Inc., which is a corporation duly formed and existing under the laws of Delaware with a principal place of business in Woodland Hills, California.

(b.) Plaintiff has five Limited Partners: SunAmerica Affordable Housing Partners 176, a Nevada limited partnership ("SAAHP 176"); SunAmerica Affordable

Housing Partners 141, a Nevada limited partnership ("SAAHP 141"); SunAmerica Affordable Housing Partners 142, a Nevada limited partnership ("SAAHP 142"); SunAmerica Affordable Housing Partners 143, a Nevada limited partnership ("SAAHP 143"); SunAmerica Affordable Housing Partners 145, a Nevada limited partnership ("SAAHP 145").

(i) SAAHP 176 has as its General Partner SAHP 176, L.P., a Nevada limited partnership, and as its Limited Partner Affordable Housing Partners, Inc., a corporation duly formed and existing under the laws of Delaware, with a principal place of business in Los Angeles, California. SAHP 176, L.P., a Nevada limited partnership has as its General Partner SA Affordable Housing, LLC, a Delaware limited liability company ("SAAH LLC"), and its Limited Partners are seven natural persons, none of whom is domiciled in Michigan. The sole member of SAAH LLC is American General Life Insurance Company, a corporation duly formed and existing under the laws of Texas with a principal place of business in Woodland Hills, California.

(ii) SAAHP 141 has as its General Partner SAHP 141, L.P., a Nevada limited partnership, and as its Limited Partner NL-SAHP 141 Trust (Norlease, Inc.), a trust duly formed and existing under the laws of Illinois. SAHP 141, L.P. has as its General Partners SAAH LLC, (described above) and SAFG Retirement Services, Inc. ("SAFG"), a corporation duly formed under the laws of Delaware with a principal place of business in Woodland Hills, CA, and its Limited Partners are seven natural persons, none of whom is domiciled in Michigan.

(iii)   SAAHP 142 has as its General Partner SAHP 142, L.P., a Nevada limited partnership, and its Limited Partner is UBOC Community Development Corporation, which is, upon information and belief, a corporation duly formed and existing under the laws of California, with its principal place of business in San Francisco, California. SAHP 142, L.P. has as its General Partner SAFG (described above) and its Limited Partners are seven natural persons, none of whom is domiciled in Michigan.

(iv)   SAAHP 143 has as its General Partner SAHP 143, L.P., a Nevada limited partnership, and its Limited Partner is Citicorp USA, Inc., which is, upon information and belief, a corporation duly formed and existing under the laws of Delaware, with its principal place of business in New York, New York.  SAHP 143, L.P. has as its General Partners SAFG (described above) and SAAH LLC (described above), and its Limited Partners are seven natural persons, none of whom is domiciled in Michigan.

(v)    SAAHP 145 has as its General Partner SAHP 145, L.P., a Nevada limited partnership, and as its Limited Partner FNBC Leasing Corporation, which is, upon information and belief, a corporation duly formed and existing under the laws of Delaware, with its principal place of business in Chicago, Illinois.  SAHP 145, L.P. has as its General Partners SAFG (described above) and SAAH LLC (described above) and its Limited Partners are seven natural persons, none of whom is domiciled in Michigan.

13. Upon information and belief, Defendant Pathway is a corporation formed under the laws of Michigan, with its principal place of business located at 850 Stephenson Highway, Suite 200, Troy, Michigan 48083.

14. Upon information and belief, Defendant PV North is a limited liability company formed under the laws of Michigan, with its principal place of business located at 25300 West Six Mile Road, Redford, Michigan 48240.  Upon information and belief, the sole member of PV North is a corporation organized and existing under the laws of Michigan.

15. Upon information and belief, Presbyterian is a non-profit corporation formed under the laws of Michigan, with a principal place of business in Southfield, Michigan.

16. The amount in controversy in this dispute exceeds $75,000, exclusive of interest and cost.

17. Thus, all of the requirements of 28 U.S.C. § 1332 are satisfied, and this Court has subject matter jurisdiction over this matter by reason of the diversity of citizenship of the parties.

18. This Court has personal jurisdiction over each of the Defendants because each has a principal place of business in Michigan.

19. Under 28 U.S.C. § 1391, venue lies in the Eastern District of Michigan because the Apartment Complex, whose sale the parties dispute, is located in Oakland County, Michigan, which is within the territorial limits of this District pursuant to 28 U.S.C. § 102, and a substantial part of the events or omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS
## COMMON TO ALL CAUSES OF ACTION

**The Parties**

20. Plaintiff SHF 1050 is the only limited partner in the Partnership and owns 99.99 percent of the interests in the Partnership.

21. Defendants Pathway and PV North are the General Partners of the Partnership and they collectively own 0.01 percent of the interests in the Partnership.

22. Upon information and belief, Presbyterian is a non-profit corporation that is affiliated with the General Partners of the Partnership.

**The Partnership Agreement**

23. On or about June 30, 2001, as general partners of the Partnership, Pathway Senior Living of Michigan, LLC and Presbyterian executed a Certificate of Limited Partnership for the formation of the Partnership pursuant to the terms of the Michigan Revised Uniform Limited Partnership Act, and such Certificate was filed with the Secretary of the State of Michigan on July 3, 2001.

24. Through the Partnership Agreement, Pathway and PV North became the co-general partners and SHF 1050 became sole limited partner of the Partnership. A true and correct copy of the Partnership Agreement is annexed hereto as **Exhibit 1**.

25. Pursuant to section 5.01 of the Partnership Agreement, Pathway acquired a 0.0049 percentage partnership interest in the Partnership, PV North acquired a 0.0051 percentage partnership interest, and SHF 1050 acquired a 99.9 percentage partnership interest.

26. Section 3.02 of the Partnership Agreement grants the Partnership the power and authority to acquire the Land (as defined therein) and the Apartment Complex; to rehabilitate, operate, maintain, improve, buy, own, sell, convey, assign, mortgage, rent or lease any real estate and any personal property necessary to the operation of the Apartment Complex; provide affordable housing consistent with ancillary agreements, guidance and regulations adopted under the LIHTC program, and "subject to the approval of the Agency [Michigan State Housing Development Authority] and/or the Lender, if required, and to other limitations expressly set forth elsewhere in this Agreement, negotiate for and conclude agreements for the sale, exchange, lease

or other disposition of all or substantially all of the property of the Partnership," among other powers.

27. Pursuant to Section 8.01(a) of the Partnership Agreement, the management and operation of the Apartment Complex were entrusted to PV North and Pathway, who are jointly defined as the "General Partner" in the Partnership Agreement. Importantly, however, the discretion and authority of PV North and Pathway to manage and control the Apartment Complex and any other decisions affecting the business of the Partnership are limited by the express requirement that they "shall take all actions necessary or appropriate to protect the interests of the Limited Partners [i.e., SHF 1050] and of the Partnership."

28. Critically, Section 8.02 limits the authority of PV North and Pathway, as the General Partner, in several ways. In particular, Section 8.02 allows SHF 1050 the right to request that the Apartment Complex be sold, subject to Presbyterian's purchase options in Article 17 of the Partnership Agreement, which request – if it had been made – could have triggered Presbyterian's purchase rights under Article 17. SHF 1050 never made such a request and therefore did not trigger Presbyterian's purchase rights.

29. Article 17 of the Partnership Agreements grants, under separate terms, the ROFR and an option to Presbyterian. As provided under its express terms, the term of the ROFR "shall commence one day after the Compliance Period and shall terminate one year thereafter."

30. The purchase price under the ROFR is set forth in Section 17.04 of the Partnership Agreement and, as allowed under Section 42(i)(7)(A) of the Internal Revenue Code, is the sum of all outstanding indebtedness, any loan made by SHF 1050, the amount of any Tax Credit Shortfall (as defined in the Partnership Agreement), and the amount of all federal, state, and local taxes projected to be attributed to the sale and receipt of proceeds by the Limited Partner.

31. The ROFR and the option granted under Section 17 of the Partnership Agreement are distinct from one another and may be exercised only in accordance with their terms and the other terms and conditions of the Partnership Agreement and Michigan law. Importantly, the ROFR may not be triggered until such time as SHF 1050 forms a genuine intent to sell the Apartment Complex and requests that the Apartment Complex be sold, which has not occurred. Thus, Defendants' attempt to unilaterally trigger the ROFR violates not only the terms and conditions of the Partnership Agreement and Michigan law with respect to rights of first refusal, but it would improperly convert the ROFR into an option, which is contrary to the plain language of the Partnership Agreement.

32. Section 17.01 provides that an exercise of the ROFR requires "an opinion of counsel reasonably acceptable to Partnership and the Investment Partnership [i.e., SHF 1050] that the exercise of the right of first refusal will not cause any recapture of tax credits to any Partner of Partnership allowable under Section 42 of the Code, that there is no existing Event of Default of General Partner under this Agreement, and that Presbyterian is a qualified nonprofit organization or government agency as required by Section 42(i)(7)(A) of the Code."

33. Section 17.03 provides that an exercise of the ROFR requires "receipt of a *bona fide offer*" and exercise of the right within 30 days of the Partnership's notice to Presbyterian of receipt of such an offer.

34. Moreover, a right of first refusal has a long established meaning under the law of Michigan and the general common law, which includes, among other elements, a genuine and honest offer of purchase from a third party, sufficient to support the formation of a contract, and a genuine and honest interest and intent by the owner to accept the offer and sell the subject property to a third party, none of which exist in the present case.

35. By contrast, an option to purchase has a long established meaning under the law of Michigan and the general common law that provides an open, standing offer to sell the subject property, which may be exercised by the option holder upon the terms agreed for the option, even if the seller does not wish to sell.

36. Presbyterian was also granted a unilateral option under Article 17 of the Partnership Agreement, which may be exercised upon "written notice of the exercise," by Presbyterian during the term of one year commencing after the end of the Compliance Period, for a price which is the greater of the fair market value of the Apartment Complex, or the price defined for the ROFR.

37. Unlike the ROFR, the option granted to Presbyterian does not require a bona fide third party offer or an honest intent to sell.  It may be triggered by Presbyterian unilaterally.

38. The Partnership Agreement grants SHF 1050, at Section 8.02 thereof, the right to request a sale of the Apartment Complex, which is a necessary and unsatisfied condition precedent for triggering either the ROFR or Option rights under Section 17.  In this manner, the ROFR and Option were incorporated into the Partnership Agreement to prevent the sale of the Apartment Complex to a third party if SHF 1050 wished to sell it to an unaffiliated third party but the Defendants did not.

**Defendants' Unjustified Attempt to Wrongfully Dispose of the Apartment Complex**

39. In early 2019, Presbyterian purported to provide notice to the Partnership and SHF 1050 of its intent to exercise the ROFR granted under the Partnership Agreement, notwithstanding the absence of any bona fide, honest and genuine third-party offer to purchase the Apartment Complex, the lack of any request by SHF 1050 to sell the Apartment Complex, the lack of intent by SHF 1050, as the holder of the majority of the partnership interests in the Partnership, to sell the Apartment Complex, and the fact that the General Partners themselves had and have no intent

to sell the Apartment Complex to any third party. The notice was communicated orally by the Defendants to SHF 1050.

40. On or about February 28, 2019, SHF 1050 responded by objecting to any sale of the Apartment Complex and detailing the requirements for the valid exercise of the ROFR granted under the Partnership Agreement.

41. On May 31, 2019, PV North provided notice to the other partners, Pathway and SHF 1050, as well as Presbyterian of a purported third-party offer, dated May 21, 2019 from Lockwood Development Company, LLC of Southfield, Michigan ("Lockwood"). Lockwood's purported offer, by its own terms, was neither a final, binding offer to purchase the Apartment Complex, nor one which if accepted, would form the basis of a binding agreement; nor was it made with a genuine and honest intent to purchase the Apartment Complex.

42. Lockwood's sham offer disclosed that it would be held open only during a period of fourteen days from May 21, 2019 and it was not binding on Lockwood. Rather, the sham offer provides that even after a purported acceptance, Lockwood would have sole discretion to terminate any resulting agreement for "any or no reason":

> During the Investigation Period [after acceptance] [Lockwood] may make such investigations as [Lockwood] considers appropriate, *in its sole discretion*, in order to determine whether the Property is suitable for its purposes. If [Lockwood] determines *for any reason or no reason* that it does not wish to acquire the [Apartment Complex], [Lockwood] may terminate this Agreement by written notice to Seller on or before the expiration of the [sixty days].

43. In addition, the purported offer is conditioned upon satisfactory presentment of an owner's "title insurance policy, without standard exceptions" in the amount of the purchase price, and Lockwood's acceptance of a survey of the Apartment Complex in its discretion. Any failure of these conditions, which are subject to Lockwood's sole satisfaction, also results in the "[the] offer [becoming] null and void."

44. The purported offer also requires certain representations that are false and therefore necessarily unacceptable to the Partnership. The purported offer requires a representation that no action or suit be pending or threatened relating to the Apartment Complex. Given SHF 1050's clear assertion of its rights, this representation is false. The purported offer also requires a representation that all necessary "corporate, partnership or other action to authorize the [sale]" have been undertaken. This representation is also false, because the General Partners have failed to satisfy all necessary preconditions for the sale of the Apartment Complex, including the requirement that SHF 1050 request the sale of the Apartment Complex and that the General Partners not be in default under the Partnership Agreement.

45. For these reasons, upon information and belief, Lockwood's purported offer is a sham, made for the sole purpose of assisting Defendants in attempting to self-trigger and exercise the ROFR. Upon information and belief, Lockwood has no honest intent of purchasing or acquiring the Apartment Complex, but was motivated to make a sham offer for other reasons.

46. SHF 1050, which owns 99.9 percent of the Partnership, has no interest at this time in selling the Apartment Complex, and it is against its interests to sell at this time. Furthermore, it is against the interests of the Partnership to sell the Apartment Complex at this time.

47. Upon information and belief, neither PV North nor Pathway considered the best interests of the Partnership and SHF 1050 in considering whether to accept Lockwood's sham offer. Neither PV North nor Pathway undertook a reasonable appraisal of the Apartment Complex, obtained any legal opinion concerning tax consequences from its sale as required by Section 17.01 of the Partnership Agreement, obtained the express consent of SHF 1050 as required by Section 8.02(b) thereof, or investigated other consequences to the Partnership and SHF 1050 of a sale.

48. Despite the failure to satisfy the conditions required by the Partnership Agreement for the triggering and exercise of the ROFR, the sham nature of Lockwood's purported offer, the lack of consent by SHF 1050 as the majority Partner, and the failure to meet any and all other conditions required in connection with a proper exercise of the ROFR, on June 3, 2019 Presbyterian represented that it intended to exercise the ROFR granted under the Partnership Agreement and that it intended to proceed with a transaction of purchase and sale of the Apartment Complex. Neither Pathway nor PV North have objected to Presbyterian's purported exercise of the ROFR, nor have they taken any other action to protect the interests of the Partnership or SHF 1050.

## **AS AND FOR A FIRST CAUSE OF ACTION**
(Declaratory Judgment)

49. Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs "1" through "48" as if set forth fully herein.

50. Pursuant to 28 U.S.C. § 2201, this Court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed.

51. There is presently a concrete and justiciable legal dispute between the parties concerning their legal rights, obligations, and standing under the terms of the Partnership Agreement, the laws of Michigan, the Internal Revenue Code, regulations and rules promulgated to implement the LIHTC program, and Congressional intent.

52. In particular, Section 42(i)(7) of the Code provides:

> Impact of tenant's right of 1st refusal to acquire property.
>
> > (A) In general. No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low-income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident

> management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(C)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B).
>
> (B) Minimum purchase price.  For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of--
>
>> (i) the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants), and
>>
>> (ii) all Federal, State, and local taxes attributable to such sale.
>
> Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii).

53. Upon information and belief, Defendants believe that the terms of Section 42(i)(7) trump, displace, or preempt both the terms of the Partnership Agreement and Michigan law concerning the well-established meaning of an ordinary right of first refusal.  Defendants' position disregards the requirements, under Michigan law and the Partnership Agreement, concerning a bona fide third-party offer to purchase, the seller's honest intent to sell to a third party, the seller's genuine interest in the third party's offer, and the consent necessary by the partner holding the overwhelming percentage of all partnership interests to request a sale.

54. SHF 1050 believes that that explicit words "right of first refusal" in Section 42(i)(7) accept, assume, adopt, incorporate, and/or are consistent with the long-established meaning and understanding of rights of first refusal in the common law of Michigan and should be interpreted consistent therewith.

55. Indeed, the legislative history of Section 42 reveals that Congress specifically considered, and rejected, terms that would have defined or authorized the granting of an "option"

in lieu of a "right of first refusal."  Congress considered the differences between these two terms as understood consistently in the common law.

56. Defendants also disregard the clear and unambiguous terms of the Partnership Agreement, which include an explicit request from SHF 1050 to sell the Apartment Complex, a bona fide third-party offer to purchase the Apartment Complex and a legal opinion that is satisfactory to SHF 1050.

57. In addition, Defendants are not entitled to exercise the ROFR because of their unclean hands.  Upon information and belief, Defendants engaged in inequitable, bad faith and unjust conduct by soliciting Lockwood to provide a sham offer for the sole purpose of triggering the ROFR in exchange for undisclosed inducements.

58. Accordingly, SHF 1050 is entitled to a judgment declaring that Presbyterian may not unilaterally exercise the ROFR granted in the Partnership Agreement, unless and until all the conditions necessary for the exercise of a right of first refusal under the law of Michigan and the Partnership Agreement have been satisfied, and presently, there are no conditions triggering the ROFR.

**AS AND FOR A SECOND CAUSE OF ACTION**
(Breach of Contract – Event of Default)

59. SHF 1050 repeats and re-alleges each and every allegation set forth in the foregoing paragraphs "1" through "58" as if set forth fully herein.

60. The Partnership Agreement constitutes a valid and enforceable written contract between SHF 1050 and the Defendants.

61. SHF 1050 has performed all of its obligations under the Partnership Agreement.

62. Through their explicit and unequivocal words and deeds, Defendants have definitively repudiated their obligations and duties under the Partnership Agreement to take all

actions necessary and appropriate to protect the interests of SHF 1050 as the Limited Partner holding 99.99 percent of the partnership interests in the Partnership and to refrain from taking any actions which are not authorized or granted under the Partnership Agreement.

63.     Defendants' unequivocal repudiation of their current and future obligations under the Partnership Agreement constitutes a breach of the Partnership Agreement and an Event of Default by them thereunder.

64.     As the direct result of Defendants' repudiation and breach of the Partnership Agreement, SHF 1050 is presently incurring and will incur damages and other harm in an amount to be proved at trial.

65.      Accordingly, SHF 1050 is entitled to a judgment in the amount of SHF 1050's present and future damages and/or a judgment granting specific performance precluding any transfer or sale of the Apartment Complex to Presbyterian pursuant to the ROFR, unless all necessary conditions for the ROFR are satisfied.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Breach of Covenant of Good Faith and Fair Dealing)

66.     SHF 1050 repeats and re-alleges each and every allegation set forth in the foregoing paragraphs "1" through "65" as if set forth fully herein.

67.     By virtue of the Partnership Agreement, SHF 1050 and each of Defendant are parties to a contract.

68.     Each party to a contract has an implied duty and obligation not to act dishonestly, corruptly, or otherwise in bad faith such as to destroy the bargained and anticipated benefits or fruits of the contract for any other party to the contract.

69.     SHF 1050 has performed all of its obligations under the Partnership Agreement and has conducted itself, with respect to the Defendants, at all times in good faith and in a fair manner.

70. Defendants' conduct is contrary to the purposes of the Partnership Agreement and presently or imminently threatens to destroy certain of SHF 1050's bargained and negotiated benefits from its interest in the Partnership, which SHF 1050 has or had previously enjoyed as a result of the parties' bargained agreement.

71. Accordingly, SHF 1050 is entitled to a judgment against Defendants in an amount to be proved at trial and/or an injunction to restrain and enjoin Defendants' breaches of the covenant of good faith and fair dealing.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Breach of Fiduciary Duty and Waste)

72. SHF 1050 repeats and re-alleges each and every allegation set forth in the foregoing paragraphs "1" through "71" as if set forth fully herein.

73. PV North and Pathway entered into a partnership with SHF 1050, and each partner has duties of utmost good faith, honesty, fairness, loyalty, and to avoid self-dealing.  In addition, managing partners owe duties of diligence, due care, and undivided loyalty to manage all assets and the business of the partnership for the benefit of the partners.

74. PV North's and Pathway's actions undertaken to dispose of substantially all property and assets of the Partnership, for less than fair value, over the express objection of SHF 1050 and in violation of the terms of the ROFR granted to Presbyterian, constitute breaches of PV North's and Pathway's fiduciary duties owed to SHF 1050, unclean hands, as well as waste of the assets of the Partnership.

75. As a direct result of PV North's and Pathway's breaches, SHF 1050 has suffered and continues to suffer damages as well as irreparable harm to its rights as partner and holder of no less than 99.99 percent of the interests in the Partnership.

76. Accordingly, SHF 1050 is entitled to a judgment in an amount of damages to be proved at trial and/or an injunction restraining the conduct of PV North and Pathway.

**WHEREFORE**, Plaintiff SHF 1050 respectfully requests that this Court enter judgment in its favor and against Defendants, as follows:

A. On the First Cause of Action, awarding SHF 1050 judgment declaring that:

(1) Defendants have failed to satisfy all conditions precedent and subsequent for the exercise the Right of First Refusal in the Partnership Agreement and are prohibited from so doing.

(2) Defendants are prohibited from transferring the Apartment Complex to Presbyterian or otherwise having Presbyterian undertake any ownership or control over the Apartment Complex or its mortgage indebtedness under the Right of First Refusal contained within the Partnership Agreement.

B. On the Second Cause of Action, awarding SHF 1050 damages in an amount to be proved at trial, plus applicable interest thereon, and a judgment of specific performance of the terms of the Partnership Agreement such as to prohibit any transfer of the Apartment Complex pursuant to the ROFR unless all conditions necessary for its exercise are satisfied;

C. On the Third Cause of Action, awarding SHF 1050 damages in an amount to be proved at trial, plus applicable interest thereon, and an injunction against Defendants prohibiting any transfer of the Apartment Complex pursuant to the ROFR unless all conditions necessary for its exercise are satisfied;

D. On the Fourth Cause of Action, awarding SHF 1050 damages in an amount to be proved at trial, plus applicable interest thereon, and an injunction against Defendants prohibiting

any transfer of the Apartment Complex pursuant to the ROFR unless all conditions necessary for its exercise are satisfied;

    E.    Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated:   June 14, 2019               **NIXON PEABODY LLP**
           Chicago, Illinois

                                              By:  */s/ Michael Philippi*
                                                      Michael J. Philippi
                                           70 West Madison St.
                                           Suite 3500
                                           Chicago, IL 60602
                                           Telephone: 312-977-4400

                                           *Attorneys for Plaintiff,*
                                           *SunAmerica Housing Fund No. 1050*