UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUNAMERICA HOUSING FUND 1050, a
Nevada Limited Partnership,

                              Plaintiff,        Case No. 2:19-cv-11783-AJT-MKM

v.                                     Hon. Arthur J. Tarnow
                                     Magistrate Judge Mona K. Majzoub
PATHWAY OF PONTIAC, INC., a Michigan
corporation; PV NORTH LLC, a Michigan
limited liability company; and PRESBYTERIAN
VILLAGE NORTH, a Michigan corporation,

                              Defendants.

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

Defendants Pathway of Pontiac, Inc., a Michigan corporation ("Pathway"), PV North LLC, a Michigan limited liability company ("PV North"), and Presbyterian Village North, a Michigan corporation ("Presbyterian"), state as follows for their Answer to the Complaint of Plaintiff SunAmerica Housing Fund 1050 ("SHF 1050" or "Plaintiff"):

## NATURE OF THE CASE

1.      Pathway and PV North are co-general partners in the Pontiac ILF Limited Dividend Housing Association Limited Partnership, a Michigan limited partnership formed pursuant to the terms of the Michigan Revised Uniform Limited Partnership Act (the "Partnership "), and they are parties to the Partnership's Amended and Restated Agreement of Limited Partnership, as amended from time to time (the "Partnership Agreement").

**ANSWER:**

It is admitted that Pathway and PV North are the general partners of the Pontiac ILF Limited Dividend Housing Association Limited Partnership (the "Partnership"). It is further admitted that the partnership is a Michigan limited partnership formed pursuant to the terms of the Michigan Revised Uniform Limited Partnership Act, and it is further admitted that Pathway and PV North are both parties to the Partnership's Amended and Restated Agreement of Limited Partnership, dated September 1, 2002 (the "Partnership Agreement").  Defendants further affirmatively state that PV North was the original owner of a U.S. Housing and Urban Development, Section 202 senior subsidized housing program whose sole purpose was to sell the subject property to the Partnership, to be renovated and operated for the 15 year compliance period required under I.R.C. §42 in order to obtain low income housing tax credits ("LIHTC"), and with the intent of having the subject property returned to PV North following the compliance period. Except as expressly admitted above, any and all further allegations contained in this paragraph are denied.

2.    SHF 1050 is the limited partner in the Partnership.

**ANSWER:**

It is admitted that SHF 1050 is the limited partner in the Partnership.  Further responding, Defendants state that SHF 1050 may be referred to, from time to time in the Partnership Agreement, as the "Investment Partnership," which is expressly defined to mean the same thing as a limited partner.  Defendants further affirmatively state that, as

2

**the Investment Partnership, SHF 1050 received all of the benefits intended from investing in the Partnership through the full allocation of all expected low income housing tax credits during the 15-year compliance period, and additionally received unexpected positive annual cash flows as a result of PV North's efforts.**

3. The parties entered into the Partnership Agreement in order to acquire , rehabilitate, and operate a multi-family residential building, located in Pontiac, Michigan (the " Apartment Complex") to provide affordable housing to qualified individuals, pursuant to the Low-Income Housing Tax Credit ("LIHTC") program under Section 42 of the Internal Revenue Code, 26 U.S.C. § 42 (the "Code").

**ANSWER:**

**In response to the allegations of this paragraph, Defendants admit only that the Partnership was formed, and the Partnership Agreement entered into, in order to acquire, rehabilitate, own, maintain and operate a 150-unit apartment complex intended for rental to elderly persons of low and moderate income, known as Presbyterian Village North, and located in Pontiac, Michigan (the "Apartment Complex"), to provide affordable housing to qualified individuals, pursuant to the LIHTC program under §42 of the Internal Revenue Code, 26 U.S.C. §42. Further responding, Defendants state that the parties' Letter of Intent and the Partnership Agreement also sets forth the relations between the parties as general and limited partners, provides for the relative rights, duties and obligations of the parties, provides for allocation of distributions, including distributions of tax credits to the limited partner during the 15-year compliance period, and makes provisions for transfer of**

3

ownership of the Apartment Complex to Presbyterian at the conclusion of the 15-year tax credit compliance period, in order to facilitate it continuing to provide affordable housing for elderly persons of low and moderate income.

4.      The present dispute arises from the efforts of Pathway and PV North, as co-general partners of the Partnership, to improperly attempt to cause the Partnership to transfer the Apartment Complex to their affiliate Presbyterian by purporting to cause or allow Presbyterian to exercise a right of first refusal (the "ROFR") granted to it under the Partnership Agreement.

**ANSWER:**

Pathway and PV North deny any and all allegations that they have improperly attempted to cause or allow the Partnership to transfer the Apartment Complex to their affiliate Presbyterian by purporting to cause or allow Presbyterian to exercise a right of first refusal ("ROFR") granted to it under the Partnership Agreement.  Further responding, Defendants state that the provisions of the Partnership Agreement speak for themselves, and Defendants further affirmatively state that the Partnership received a bona fide offer to purchase the Apartment Complex and, as required by Article 17 of the Partnership Agreement, PV North notified Presbyterian of this offer in writing, and Presbyterian has validly and appropriately exercised the ROFR as provided in the Partnership Agreement.  Plaintiff has unreasonably and without good cause objected to Presbyterian's exercise of the ROFR and has improperly and without good cause initiated the instant litigation in an attempt to prevent Presbyterian from exercising its ROFR rights granted to it under the Partnership Agreement, and to gain even more economic benefit than originally intended by the parties' Letter of Intent or the Partnership Agreement.

4

5.      The ROFR was granted to Presbyterian pursuant to a provision of Section 42 of the Code which permits such a ROFR to be granted to a qualified entity for a statutorily defined minimum purchase price.

**ANSWER:**

**In response to the allegations of this paragraph, Defendants admit that certain provision(s) of IRC §42 permit a ROFR to be granted to a qualified entity for a statutorily defined minimum purchase price.  Defendants further admit that the terms and conditions of the ROFR are set forth in Article 17 of the Partnership Agreement, which provisions speak for themselves.  Except as so admitted, Defendants deny any and all remaining allegations contained in this paragraph.**

6.      Defendants' attempt to transfer and sell the Apartment Complex by purporting to allow Presbyterian to exercise the ROFR is unlawful because none of the requisite triggering conditions has been satisfied, according to the well-established meaning of a right of first refusal under the com mon law and the Partnership Agreement.

**ANSWER:**

**Defendants deny that Presbyterian's stated intention to exercise the ROFR is unlawful.  Defendants deny that "none of the requisite triggering conditions has been satisfied," and further deny that the "requisite triggering conditions" (if any) of the ROFR are determined solely "according to the well-established meaning of a right of first refusal under the common law and the Partnership Agreement."  Further responding, Defendants**

state that the terms and conditions of the ROFR are set forth in the Partnership Agreement and are authorized by provisions of the Internal Revenue Code.  Defendants state that Presbyterian's exercise of its ROFR rights is lawful and comports with the provisions of the Partnership Agreement, as well as the Internal Revenue Code.

7.       Defendants' efforts are also  contrary to the intent and  wishes of SHF 1050 which owns 99.99 percent of the interests in the Partnership and thus is the overwhelming majority owner.

**ANSWER:**

In response to the allegations of this paragraph, Defendants state that they lack knowledge or information sufficient to form a belief as to what the present "intent and wishes" of SHF 1050 may be, except to the extent that Plaintiff's representatives have disclosed in discussions regarding this matter with Defendants that Plaintiff's investors are not willing to give up the potential economic benefit of a sale outside of the ROFR, notwithstanding that the Investment Partnership has already received the full allocation of low income housing tax credits, as expected, over the 15-year compliance period.  Further responding, Defendants state that the intent of SHF 1050 at the time the Partnership was created is set forth in the terms of the Partnership Agreement, including but not limited to the establishment of the ROFR which would allow Presbyterian to easily acquire the Apartment Complex for the existing debt following the 15-year tax credit compliance period.  Defendants admit that SHF 1050 is the owner of 99.99% of the interests in the Partnership.  Except as so admitted, Defendants deny any and all remaining allegations of

this paragraph.  Further responding, Defendants affirmatively state that the ROFR and the terms and conditions for exercise of the ROFR are set forth in the Partnership Agreement, and Presbyterian is exercising those rights in accordance with all of the terms and conditions of the Partnership Agreement.  The provisions of the Letter of Intent and the Partnership Agreement are the best evidence of the intent of the parties, including SHF 1050, with regard to this transaction and the Apartment Complex.

8.     Defendants have definitively and finally represented their intent to breach their outstanding duties and obligations arising under the Partnership Agreement, by causing a transfer of the Apartment Complex to Presbyterian. Defendants have therefore repudiated the Partnership Agreement, and there is a justiciable controversy concerning the interpretation of a ROFR granted pursuant to Section 42 of the Internal Revenue Code as well as other terms and conditions of the Partnership Agreement governing the parties' relationship.

ANSWER:

In response to the allegations of this paragraph, Defendants admit that Presbyterian is exercising its ROFR rights as provided for and allowed under the Partnership Agreement, and in accordance with the intent of the parties.  Defendants admit and agree that there is a justiciable controversy concerning the ROFR  set forth in the Partnership Agreement and authorized pursuant to §42 of the Internal Revenue Code.  Defendants deny any and all remaining allegations of this paragraph.  Further responding, Defendants state that they are acting in accordance with the express terms and conditions of the Partnership Agreement, and it is SHF 1050 that has definitively repudiated the Partnership Agreement,

by refusing to allow the exercise of the ROFR as permitted by the Partnership Agreement, simply to gain an economic benefit not intended when the Partnership Agreement was executed.   In so doing, SHF 1050 has breached its duties and obligations under the Partnership Agreement.

## JURISDICTION AND VENUE

9.      Under 28 U.S.C. § 1331, Plaintiff requests a declaration concerning the legal rights and obligations of the parties arising under Section 42(i)(7) of the Internal Revenue Code, all related regulations, and the intent of the U.S. Congress, together with the common law of the State of Michigan, incorporated or adopted in Section 42, which constitutes a legal controversy that arises under the laws of the United States. The parties' dispute concerning their respective rights and obligations, which flow directly from Section 42(i)( 7), raises   a federal question  that   is genuinely controverted, necessary, and substantial, and it does not alter the federal-state judicial balance.

**ANSWER:**

**The provisions of 28 U.S.C. §1331 speak for themselves.  The question of whether this Honorable Court has subject matter jurisdiction over any of the claims asserted by Plaintiff is a question of law to be determined by this Honorable Court, and therefore no response is required by these Defendants.  To the extent a response may be required by the Court, Defendants deny the allegations, and leave Plaintiff to its proofs.**

10.    Further,  under 28 U.S. § 1340 ,  the parties'  dispute about the correct legal

8

interpretation of Section 42(i)(7) of the Internal Revenue Code, and its application to their circumstances, constitutes a dispute arising under an Act of Congress providing for internal revenue.

**ANSWER:**

**The provisions of 28 U.S.C. §1340 speak for themselves.  The question of whether this Honorable Court has subject matter jurisdiction over any of the claims asserted by Plaintiff is a question of law to be determined by this Honorable Court, and therefore no response is required by these Defendants.  To the extent a response may be required by the Court, Defendants deny the allegations, and leave Plaintiff to its proofs.**

11.     Thus, this Court has subject matter jurisdiction over this matter because the action involves an embedded federal legal question and this action arises under a federal taxation statute. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other claims and causes of action asserted between the parties.

**ANSWER:**

**The provisions of 28 U.S.C. §1367, providing for supplemental jurisdiction, speak for themselves.  The question of whether this Honorable Court has or may exercise such supplemental jurisdiction over any of the claims asserted by Plaintiff is a question of law to be determined by this Honorable Court, and therefore no response is required by these Defendants.  To the extent a response may be required by the Court, Defendants deny the allegations, and leave Plaintiff to its proofs.**

9

12.     In addition, under 28 U.S.C. § 1332, the parties in this matter are completely diverse.  Plaintiff is a limited partnership duly formed under the laws of Nevada, with its principal place of business in Los Angeles, California, and none of Plaintiff's partners is domiciled in Michigan. The domicile of Plaintiffs partners is as follows:

(a.)    Plaintiff's General Partner is SAFG Retirement Services. Inc., which is a corporation duly formed and existing under the laws of Delaware with a principal place of business in Woodland Hills, California.

(b.)    Plaintiff has five Limited Partners: SunAmerica Affordable Housing Partners 176, a Nevada limited partnership ("SAAHP 176"); SunAmecrica Affordable Housing Partners 141, a Nevada limited partnership ("SAAHP 141"); SunAmerica Affordable Housing Partners 142, a Nevada limited partnership ("SAAHP 142"); SunAmerica Affordable Housing Partners 14 3, a Nevada limited partnership ("SAAHP 143"); SunAmerica Affordable Housing Partners 145 , a Nevada limited partnership ("SAAHP 145").

(i)     SAAHP 176 has as its General Partner SAAHP 176, LP., a Nevada limited partnership , and as its Limited Partner Affordable Housing Partners, Inc., a corporation duly formed and existing under the laws of Delaware, with a principal place of business in Los Angeles, California. SAHP 176, LP., a Nevada limited

10

partnership has as its General Partner SA Affordable Housing, LLC, a Delaware limited liability company ("SAAH LLC"), and its Limited Partners are seven natural persons, none of whom is domiciled in Michigan. The sole member of SAAH LLC is American General Life Insurance Company, a corporation duly formed and existing under the laws of Texas with a principal place of business in Wood land Hills, California.

(ii)     SAAHP 141 has as its General Partner SAAHP 141, L.P., a Nevada limited partnership, and as its Limited Partner NL-SAHP 141 Trust (Norlease, Inc.), a trust duly formed and existing under the laws of Illinois. SAAHP 14 1, LP. has as its General Partners SAAH LLC, (described above) and SAFG Retirement Services, Inc. ("SAFG"), a corporation duly formed under the laws of Delaware with a principal place of business in Woodland Hills, CA, and its Limited Partners are seven natural persons, none of whom is domiciled in Michigan.

(iii)    SAAHP 142 has as its General Partner SAHP 142, L.P., a Nevada limited partnership, and its Limited Partner is UBOC Community Development Corporation, which is, upon information and belie f, a corporation duly formed and existing under the laws of California, with its principal place of business in San Francisco, California. SAHP 142, L.P. has as its General Partner SAFG (described above) and its Limited Partners are seven natural persons, none of whom is domiciled in Michigan.

(iv)    SAAHP 143 has as its General Partner SAHP 143, L.P., a Nevada limited

11

partnership, and its Limited Partner is Citicorp USA, Inc., which is, upon information and belief, a corporation duly formed and existing under the laws of Delaware, with its principal place of business in New York, New York. SAHP 143, L.P. has as its General Partners SAFG (described above) and SAAH LLC (described above), and its Limited Partners are seven natural persons, none of whom is domiciled in Michigan.

(v)     SAAHP 145 has as its General Partner SAHP 145, L.P., a Nevada limited partnership, and as its Limited Partner FNBC Leasing Corporation, which is, upon in formation and belief, a corporation duly formed and existing under the laws of Delaware, with its principal place of business in Chicago, Illinois. SAHP 145, L.P. has as its General Partners SAFG (described above) and SAAH LLC (described above) and its Limited Partners are seven natural persons, none of whom is domiciled in Michigan.

**ANSWER:**

**Defendants lack knowledge or information sufficient to form a belief as to the proof of Plaintiff's allegations regarding the domicile of Plaintiff's partners, and therefore neither admit nor deny said allegations. Defendants admit that Plaintiff is a Nevada limited partnership with its principal place of business located in Los Angeles, California.**

13.     Upon information and belief, Defendant Pathway is a corporation formed under the law s of Michigan, with its principal place of business located at 850 Stephenson Highway, Suite 200, Troy, Michigan 48083.

12

**ANSWER:**

**Admitted.**

14.     Upon information and belief, Defendant PV North is a limited liability company formed under the laws of Michigan, with its principal place of business located at 25300 West Six Mile Road, Redford, Michigan 48240. Upon information and belief, the sole member of PV North is a corporation organized and existing under the laws of Michigan.

**ANSWER:**

**Admitted.**

15.     Upon information and belief, Presbyterian is a non-profit corporation formed under the laws of Michigan, with a principal place of business in Southfield, Michigan.

**ANSWER:**

**Admitted.**

16.     The amount in controversy in this dispute exceeds $75,000, exclusive of interest and cost.

**ANSWER:**

**Defendants lack knowledge or information sufficient to form a belief as to the truth of this allegation, and therefore neither admit nor deny the same, but leave Plaintiff to its proofs.**

**17.**     Thus, all of the requirements of 28 U.S.C. §1332 are satisfied, and this Court has subject matter jurisdiction over this matter by reason of the diversity of citizenship of the parties.

**ANSWER:**

The provisions of 28 U.S.C. §1332 speak for themselves, and the determination of whether or not the requirements thereof are satisfied and/or this Honorable Court has subject matter jurisdiction by reason of the diversity of citizenship of the parties is a question of law to be determined by this Honorable Court; therefore, no response to these allegations is required. To the extent that the Court may require an answer of these Defendants, Defendants neither admit nor deny the same, leaving Plaintiff to its proofs.

18. This Court has personal jurisdiction over each of the Defendants because each has a principal place of business in Michigan.

**ANSWER:**

Defendants admit that each of them maintains a principal place of business in Michigan.  The determination of whether or not this Court has personal jurisdiction over each of the Defendants is a question of law to be determined by this Honorable Court and to which no response is required by these Defendants.  To the extent that the Court may require a response, Defendants neither admit nor deny the same, but leave Plaintiff to its proofs.

19.      Under 28 U.S.C. § 1391, venue lies in the Eastern District of Michigan because the Apartment Complex, whose sale the parties dispute, is located in Oakland County, Michigan, which is within the territorial limits of this District pursuant to 28 U.S.C. § 102, and a substantial part of the events or omissions giving rise to this action occurred in this District.

**ANSWER:**

14

The provisions of 28 U.S.C. 1391 concerning venue speak for themselves. Defendants admit that the Apartment Complex which is the subject matter of their dispute is located in the City of Pontiac, Oakland County, Michigan which is within the territorial limits of this judicial district.

## FACTUAL ALLEGATIONS
## COMMON TO ALL CAUSES OF ACTION

**The Parties**

20.     Plaintiff SHF 1050 is the only limited partner in the Partnership and owns 99.99 percent of the interests in the Partnership.

**ANSWER:**

**Admitted. Further responding, Defendants state that they (or parties affiliated with them) were the original limited partner(s) prior to closing on the transaction with Plaintiff.**

21.     Defendants Pathway and PV North are the General Partners of the Partnership and they collectively own 0.01 percent of the interests in the Partnership.

**ANSWER:**

**Admitted.**

22.     Upon information and belief, Presbyterian is a non-profit corporation that is affiliated with the General Partners of the Partnership.

**ANSWER:**

**Defendants admit that Presbyterian is a nonprofit corporation. Defendants further admit that Presbyterian is affiliated with PV North; however, Presbyterian is not affiliated**

15

with Pathway, and therefore Defendants deny this allegation.   Further responding,
Defendants state that the sole member of Presbyterian is Presbyterian Villages of Michigan
(PVM), a Michigan nonprofit corporation and 501(c)(3) entity, first established in 1945,
which hosts an aging services network, serving 10,000 older adults annually with safe,
secure and affordable housing and health and wellness services.   PVM established
Presbyterian in 1978 to create subsidized senior housing.   PVM carries out its work with
700 employees and 300 volunteer-governing board members throughout Michigan.   PVM
is committed to the preservation of affordable housing and intent on creating an affordable
continuum of housing and health and wellness services through its affiliate, Presbyterian,
to care for more seniors.   Due to Plaintiff's actions, Presbyterian has been unable to proceed
with this project, causing further damage to Presbyterian, PVM, and the residents they
serve.

## The Partnership Agreement

23.     On or about June 30, 2001, as general partners of the Partnership, Pathway
Senior Living of Michigan, LLC and Presbyterian executed a Certificate of Limited Partnership
for the formation of the Partnership pursuant to the terms of the Michigan Revised Uniform
Limited Partnership Act, and such Certificate was filed with the Secretary of the State of
Michigan on July 3, 2001.

**ANSWER:**

Admitted.

24.     Through the Partnership Agreement, Pathway and PV North became the co-

16

general partners and SHF 1050 became sole limited partner of the Partnership. A true and correct copy of the Partnership Agreement is annexed hereto as **Exhibit 1.**

**ANSWER:**

**Defendants admit that a copy of the Partnership Agreement is attached as Exhibit 1 to Plaintiff's Complaint.   Defendants further admit that through the Partnership Agreement, Pathway and PV North became general partners and SHF 1050 became the sole limited partner of the Partnership.   Further responding, Defendants state that also through the Partnership Agreement, Pathway Senior Living of Michigan, LLC withdrew as a general partner of the Partnership, as did Mr.  Jerome E. Finis, who was the original limited partner of the Partnership.**

25.      Pursuant to section 5.01 of the Partnership Agreement, Pathway acquired a 0.0049 percentage partnership interest in the Partnership, PV North acquired a 0.0051 percentage partnership interest, and SHF 1050 acquired a 99.9 percentage partnership interest.

**ANSWER:**

**Section 5.01 of the Partnership Agreement speaks for itself.  Defendants admit that Pathway's partnership interest in the Partnership is 0.0049% and PV North's partnership interest is 0.0051%.  Further responding, Defendants state that §5.01(b) of the Partnership Agreement states that SHF 1050's partnership interest is "99.9%;" however, this is appears**

17

**to be a typographical error, as the mathematically correct percentage, given the above stated percentage interests of the general partners, would be 99.99%.**

26.    Section 3.02 of the Partnership Agreement grants the Partnership the power and authority to acquire the Land (as defined therein) and the Apartment Complex; to rehabilitate, operate , maintain , improve, buy, own, sell, convey, assign , mortgage , rent or lease any real estate and any personal property necessary to the operation of the Apartment Complex; provide affordable housing consistent with ancillary agreements, guidance and regulations adopted under the LIHTC program. and " subject to the approval of the Agency [Michigan State Housing Development Authority] and/or the Lender, if required, and to other limitations expressly set forth elsewhere in this Agreement, negotiate for and conclude agreements for the sale, exchange, lease or other disposition of all or substantially all of the property of the Partnership," among other powers.

**ANSWER:**

**Section 3.02 of the Partnership Agreement speaks for itself, and generally describes the authority of the Partnership.  Except as so admitted, Defendants deny any and all remaining allegations contained in this paragraph.**

27.    Pursuant to Section 8.01(a) of the Partnership Agreement, the management and operation of the Apartment Complex were entrusted to PV North and Pathway, who are jointly defined as the "General Partner" in the Partnership Agreement.  Importantly, however, the

18

discretion and authority of PV North and Pathway to manage and control the Apartment Complex and any other decisions affecting the business of the Partnership are limited by the express requirement that they "shall take all actions necessary or appropriate to protect the interests of the Limited Partners [i.e., SHF 1050] and of the Partnership."

**ANSWER:**

**In the form and manner pled, Defendants deny the allegations of this paragraph. Further responding, Defendants state that the provisions of the Partnership Agreement speak for themselves. Defendants affirmatively state that §8.01(a) of the Partnership Agreement provides that PV North and Pathway, who are jointly defined as the "General Partner" in the Partnership Agreement, "shall have full, complete and exclusive discretion to manage and control the business of the Partnership," and that the General Partner shall manage and control the affairs of the Partnership to the best of its ability and use best efforts to carry out the purpose of the Partnership.**

28.     Critically, Section 8.02 limits the authority of PV North and Pathway, as the General Partner, in several ways. In particular, Section 8.02 allows SHF 1050 the right to request that the Apartment Complex be sold, subject to Presbyterian's purchase options in Article 17 of the Partnership Agreement, which request - if it had been made - could have triggered Presbyterian's purchase rights under Article 17. SHF 1050 never made such a request and therefore did not trigger Presbyterian's purchase rights.

**ANSWER:**

**In the form and manner pled, Defendants deny the allegations of this paragraph as**

19

untrue.   Further responding, Defendants state that the provisions of the Partnership Agreement speak for themselves.   Defendants admit only that §8.02 sets forth certain limitations upon the authority of the General Partner.   Defendants further admit only that §8.02 permits the limited partner to request a sale of the Apartment Complex under certain limited conditions.   Moreover, the limited partner's right to request a sale of the Apartment Complex is expressly made subject to Presbyterian's purchase options as set forth in Article 17 of the Partnership Agreement; including, but not limited to the ROFR.   Except as so admitted, Defendants deny any and all remaining allegations contained in this paragraph. Defendants specifically deny any allegation that the limited partner's request to sell the Apartment Complex is a necessary antecedent or "trigger" for the exercise of Presbyterian's purchase options as set forth in Article 17 of the Partnership Agreement, including but not limited to the ROFR.   As noted above, it is actually exactly the opposite: the limited partner's right to request a sale is expressly limited by and subject to the ROFR.

29.    Article 17 of the Partnership Agreement grants, under separate terms, the ROFR and an option to Presbyterian. As provided under its express terms, the term of the ROFR "shall commence one day after the Compliance Period and shall terminate one year thereafter."

**ANSWER:**

Defendants admit only that Article 17 of the Partnership Agreement sets forth certain purchase rights of Presbyterian, the terms and conditions of which are described and defined in the Partnership Agreement.   Further responding, Defendants assert that the provisions of the Partnership Agreement speak for themselves.   Except as so admitted,

**Defendants deny any and all further allegations contained in this paragraph.**

30.     The purchase price under the ROFR is set forth in Section 17.04 of the Partnership Agreement and, as allowed under Section 42(i)(7)(A) of the Internal Revenue Code, is the sum of all outstanding indebtedness, any loan made by SHF 1050, the amount of any Tax Credit Shortfall (as defined in the Partnership Agreement), and the amount of all federal, state, and local taxes projected to be attributed to the sale and receipt of proceeds by the Limited Partner.

**ANSWER:**

**Defendants admit only that §17.04 of the Partnership Agreement sets forth, among other things, the manner of computing the purchase price under the ROFR. Further responding, Defendants state that the provisions of §17.04 of the Partnership Agreement as well as the provisions of §42(i)(7)(A) of the Internal Revenue Code speak for themselves. Except as so admitted, Defendants deny any and all further allegations contained in this paragraph.**

31.     The ROFR and the option granted under Section 17 of the Partnership Agreement are distinct from one another and may be exercised only in accordance with their terms and the other terms and conditions of the Partnership Agreement and Michigan law. Importantly, the ROFR may not be triggered until such time as SHF 1050 forms a genuine intent to sell the Apartment Complex and requests that the Apartment Complex be sold, which has not occurred. Thus, Defendants' attempt to unilaterally trigger the ROFR violates not only the terms

and conditions of the Partnership Agreement and Michigan law with respect to rights of first refusal, but it would improperly convert the ROFR into an option, which is contrary to the plain language of the Partnership Agreement.

**ANSWER:**

**Defendants admit only that §17 of the Partnership Agreement describes both a ROFR and a grant of option.  The provisions of Article 17 of the Partnership Agreement speak for themselves.  Except as so admitted, Defendants deny any and all remaining allegations of this paragraph.  Further responding, Defendants affirmatively state that, contrary to Plaintiff's assertions, nothing in the Partnership Agreement requires that SHF 1050 "form a genuine interest to sell the Apartment Complex" and "request that the Apartment Complex be sold" in order to trigger the ROFR.  Further responding, Defendants state that it is in fact SHF 1050 which is violating the terms and conditions of the Partnership Agreement and Michigan law with respect to Presbyterian's rights under the ROFR.**

32.      Section 17.01 provides that an exercise of the ROFR requires "an opinion of counsel reasonably acceptable to Partnership and the Investment Partnership [i.e., SHF l050] that the exercise of the right of first refusal will not cause any recapture of tax credits to any Partner of Partnership allowable under Section 42 of the Code, that there is no existing Event of Default of General Partner under this Agreement, and that Presbyterian is a qualified nonprofit organization or government agency as required by Section 42(i)(7)(A) of the Code."

**ANSWER:**

22

**Defendants admit only that §17.01 of the Partnership Agreement contains the language quoted by Plaintiff in this paragraph.  Except as so admitted, Defendants deny any and all remaining allegations of this paragraph.  Further responding, Defendants state that they have provided an opinion of counsel to the Plaintiff that the exercise of the ROFR will not cause any recapture of tax credits to the Plaintiff.**

33.     Section 17.03 provides that an exercise of the ROFR requires "receipt of a _bona fide offer"_ and exercise of the right within 30 days of the Partnership's notice to Presbyterian of receipt of such an offer.

**ANSWER:**

**Defendants admit only that §17.03 of the Partnership Agreement contains the language quoted by Plaintiff in this paragraph, and further requires that Presbyterian shall exercise its right of first refusal within 30 days of Partnership's notice to Presbyterian in writing of an offer.  Except as so admitted, Defendants deny any and all remaining allegations of this paragraph.**

34.     Moreover, a right of first refusal has a long established meaning under the law of Michigan and the general common law, which includes, among other elements, a genuine and honest offer of purchase from a third party, sufficient to support the formation of a contract, and a genuine and honest interest and intent by the owner to accept the offer and sell the subject

property to a third party, none of which exist in the present case.

**ANSWER:**

**In response to the allegations of this paragraph, Defendants state that Plaintiff's allegations as to the "long established meaning" under the law of Michigan and the general common law of a right of first refusal are not factual allegations, but rather Plaintiff's own self-serving conclusions of law to which no response is required by these Defendants.  To the extent that the Court may require a response, Defendants deny the allegations of this paragraph as untrue.  Further responding, Defendants affirmatively state that the Partnership did, in any event, receive a bona fide offer of purchase from a third party, as required by Article 17 of the Partnership Agreement to trigger the ROFR.**

35.     By contrast, an option to purchase has a long established meaning under the law of Michigan and the general common law that provides an open, standing offer to sell the subject property, which may be exercised by the option holder upon the terms agreed for the option, even if the seller does not wish to sell.

**ANSWER:**

**In response to the allegations of this paragraph, Defendants state that Plaintiff's allegations regarding the "long established meaning" under Michigan law and the general common law of an option to purchase are not factual allegations, but rather Plaintiff's own self-serving conclusions of law to which no response is required from these Defendants.  To the extent that the Court may require a response, Defendants**

24

deny the allegations as untrue.

36.     Presbyterian was also granted a unilateral option under Article 17 of the Partnership Agreement, which may be exercised upon "written notice of the exercise," by Presbyterian during the term of one year commencing after the end of the Compliance Period, for a price which is the greater of the fair market value of the Apartment Complex, or the price defined for the ROFR.

**ANSWER:**

**Defendants admit only that Presbyterian is granted an option to purchase the Apartment Complex pursuant to §17.06 of the Partnership Agreement.  Further responding, Defendants state that the provisions of Article 17 of the Partnership Agreement, including but not limited to §17.06 thereof, speak for themselves. Defendants deny that the option price defined under Article 17 is as alleged by Plaintiff in this paragraph.  Further responding, Defendants affirmatively state that the option price, as set forth in §17.09 of the Partnership Agreement, is determined to be the greater of the fair market value of the Apartment Complex as continued low-income housing, or the purchase price defined for the ROFR.  Defendants further aver that the provisions of §17.06 of the Partnership Agreement are irrelevant, as Presbyterian has not attempted to exercise any option rights in the present case.**

37.     Unlike the ROFR, the option granted to Presbyterian does not require a bona fide third party offer or an honest intent to sell. It may be triggered by Presbyterian unilaterally.

**ANSWER:**

**Defendants admit only that the option granted to Presbyterian by Article 17 is exercisable by Presbyterian unilaterally.  Except as so admitted, Defendants deny as untrue any and all remaining allegations contained in this paragraph.**

38.     The Partnership Agreement grants SHF 1050, at Section 8.02 thereof, the right to request a sale of the Apartment Complex, which is a necessary and unsatisfied condition precedent for triggering either the ROFR or Option rights under Section 17. In this manner, the ROFR and Option were incorporated into the Partnership Agreement to prevent the sale of the Apartment Complex to a third party if SHF 1050 wished to sell it to an unaffiliated third party but the Defendants did not.

**ANSWER:**

**Defendants deny that SHF 1050's right to request a sale of the Apartment Complex is a necessary and unsatisfied condition precedent for triggering either the ROFR or option rights under §17.  Defendants deny as untrue any and all remaining allegations of this paragraph, as they are contradicted by the plain and unambiguous language of §8.02 of the Partnership Agreement.  Further responding, Defendants state**

that SHF 1050's right to request a sale under §8.02 of the Partnership Agreement is "expressly subject to Presbyterian's purchase option set forth in Article 17."

**Defendants' Unjustified Attempt to Wrongfully Dispose of the Apartment Complex**

39.     In early 2019, Presbyterian purported to provide notice to the Partnership and SHF 1050 of its intent to exercise the ROFR granted under the Partnership Agreement, notwithstanding the absence of any bona fide, honest and genuine third-party offer to purchase the Apartment Complex, the lack of any request by SHF 1050 to sell the Apartment Complex, the lack of intent by SHF 1050, as the holder of the majority of the partnership interests in the Partnership, to sell . the Apartment Complex, and the fact that the General Partners themselves had and have no intent to sell the Apartment Complex to any third party. The notice was communicated orally by the Defendants to SHF 1050.

**ANSWER:**

The allegations of this paragraph are denied as untrue. Defendants state that as early as late 2017, Presbyterian indicated to the Partnership that it desired to acquire the Apartment Complex at the conclusion of the 15-year tax credit compliance period, consistent with the intent of the parties when the Partnership Agreement was executed. This intention was communicated to SHF 1050's employee and representative, Mr. Peter Stoughton. At that time, Mr. Stoughton indicated to the Partnership that SHF 1050 "did not desire to deal with this issue" until after the end of the 15-year tax credit compliance period, which would be on December 31, 2018. Accordingly, and following the termination of the compliance period Presbyterian once again expressed its interest in acquiring the

27

**Apartment Complex to the Partnership.**

40.      On or about February 28, 2019, SHF 1050 responded by objecting to any sale of the Apartment Complex and detailing the requirements for the valid exercise of the ROFR granted under the Partnership Agreement.

**ANSWER:**

**In response to the allegations of this paragraph, Defendants state only that on or about February 28, 2019, SHF 1050 directed its legal counsel to transmit a letter to counsel for Defendants objecting to any attempt by Presbyterian to exercise its rights under the ROFR, and setting forth Plaintiff's own self-serving arguments regarding the ROFR. A copy of this letter, which was not attached to Plaintiff's Complaint, is attached to this Answer as Exhibit A.**

41.      On May 31, 2019, PV North provided notice to the other partners, Pathway and SHF 1050, as well as Presbyterian of a purported third-party offer, dated May 21, 2019 from Lockwood Development Company, LLC of Southfield, Michigan ("Lockwood"). Lockwood's purported offer, by its own terms, was neither a final, binding offer to purchase the Apartment Complex, nor one which if accepted, would form the basis of a binding agreement; nor was it made with a genuine and honest intent to purchase the Apartment Complex.

**ANSWER:**

**It is admitted that PV North received a *bona fide* offer to purchase the Apartment**

28

Complex from Lockwood Development Company, LLC ("Lockwood"), on or about May 21, 2019.  It is further admitted that on May 31, 2019, PV North provided notice to the other Partners, as well as Presbyterian, of its receipt of Lockwood's offer to purchase, as required by §17.03 of the Partnership Agreement.  Except as so admitted, Defendants deny any and all remaining allegations contained in this paragraph.  Further responding, Defendants note that Plaintiff makes numerous allegations regarding Lockwood's offer to purchase, but has failed to attach a copy of Lockwood's offer to purchase to its Complaint.  A full and complete copy of Lockwood's offer to purchase is attached as Exhibit B to this Answer.  Further responding, Defendants state that the terms and conditions of Lockwood's offer to purchase speak for themselves, and Defendants deny as untrue Plaintiff's self-serving characterizations of Lockwood's offer.

42.     Lockwood's sham offer disclosed that it would be held open only during a period of fourteen days from May 21, 2019 and it was not binding on Lockwood. Rather, the sham offer provides that even after a purported acceptance, Lockwood would have sole discretion to terminate any resulting agreement for "any or no reason":

> During the Investigation Period [after acceptance] [Lockwood] may make such investigations as [Lockwood] considers appropriate, *in its sole discretion,* in order to determine whether the Property is suitable for its purposes. If [Lockwood] determines *for any reason or no reason* that it does not wish to acquire the (Apartment Complex), [Lockwood] may terminate this Agreement by written notice to Seller on or before the expiration of the [sixty days].

**ANSWER:**

**In response to the allegations of this paragraph, all of which are denied as untrue,**

**Defendants state that the terms of Lockwood's offer, which is attached as Exhibit B to this Answer but was not attached to Plaintiff's Complaint, speak for themselves and are the best evidence of the contents thereof.   Further responding, Defendants deny as untrue Plaintiff's own self-serving mischaracterizations of the terms and conditions of the Lockwood offer to purchase.**

43.     In addition, the purported offer is conditioned upon satisfactory presentment of an owner's "title insurance policy, without standard exceptions" in the amount of the purchase price, and Lockwood's acceptance of a survey of the Apartment Complex in its discretion. Any failure of these conditions, which are subject to Lockwood's sole satisfaction, also results in the "[the] offer [becoming] null and void."

**ANSWER:**

**In response to the allegations of this paragraph, all of which are denied as untrue, Defendants state that Lockwood's offer, which is attached as Exhibit B to this Answer but was not attached to Plaintiff's Complaint, speak for themselves and are the best evidence of the contents thereof.   Further responding, Defendants deny as untrue Plaintiff's own self-serving mischaracterizations of the terms and conditions of the Lockwood offer to purchase.**

44.     The purported offer also requires certain representations that are false and therefore necessarily unacceptable to the Partnership. The purported offer requires a representation that no action or suit be pending or threatened relating to the Apartment Complex. Given SHF 1050's clear assertion of its rights, this representation is false. The purported offer also

requires a representation that all necessary "corporate, partnership or other action to authorize the [sale]" have been undertaken. This representation is also false, because the General Partners have failed to satisfy all necessary preconditions for the sale of the Apartment Complex, including the requirement that SHF 1050 request the sale of the Apartment Complex and that the General Partners not be in default under the Partnership Agreement.

**ANSWER:**

In response to the allegations of this paragraph, all of which are denied as untrue, Defendants state that the terms of Lockwood's offer, which is attached as Exhibit B to this Answer but was not attached to Plaintiff's Complaint, speak for themselves and are the best evidence of the contents thereof.  Further responding, Defendants deny as untrue Plaintiff's own self-serving mischaracterizations of the terms and conditions of the Lockwood offer to purchase.  Defendants further deny that SHF 1050's request of a sale of the Apartment Complex is a necessary precondition for the exercise of the ROFR, and Defendants deny that the General Partners are in default under the Partnership Agreement.  Defendants affirmatively state that they have acted fully in accordance with the provisions of the Partnership Agreement and have validly and properly exercised the ROFR as set forth in Article 17 of the Partnership Agreement.  It is in fact Plaintiff who has breached the terms and conditions of the Partnership Agreement, as well as its fiduciary duties to the General Partners, by improperly and wrongfully objecting to Presbyterian's exercise of its ROFR rights, and instituting this litigation as a means of thwarting  Presbyterian's lawful exercise of its ROFR rights.

31

45.      For these reasons, upon information and belief, Lockwood's purported offer is a sham, made for the sole purpose of assisting Defendants in attempting to self-trigger and exercise the ROFR. Upon information and belief, Lockwood has no honest intent of purchasing or acquiring the Apartment Complex, but was motivated to make a sham offer for other reasons.

**ANSWER:**

**Defendants deny that Lockwood's offer to purchase is a "sham," and deny Plaintiff's self-serving mischaracterizations of Lockwood's offer to purchase.  Further responding, Defendants state that the terms and conditions of Lockwood's offer to purchase speak for themselves.  Defendants deny as untrue any and all remaining allegations of this paragraph.**

46.      SHF 1050, which owns 99.9 percent of the Partnership, has no interest at this time in selling the Apartment Complex, and it is against its interests to sell at this time. Furthermore, it is against the interests of the Partnership to sell the Apartment Complex at this time.

**ANSWER:**

**Defendants lack knowledge or information sufficient to form a belief as to the truth of what SHF 1050's interest may or may not be, and lack knowledge or information sufficient to form a belief as to the truth of what is for or against SHF 1050's interests at this time.  Defendants have only been told repeatedly that Plaintiff's investors are insisting on receiving additional economic benefits from the Partnership, beyond what the parties originally intended and what Plaintiff has already received.  Defendants deny that it is contrary to the interests of the Partnership to allow Presbyterian to exercise its**

32

ROFR rights at this time.  Further responding, Defendants state that the intent of the parties when originally entering into this transaction was set forth and described in certain confidential letters of intent exchanged between them and subsequently executed among the Partners.  Based on those confidential letters of intent, copies of which are in Plaintiff's possession, Plaintiff has achieved all of what they intended and bargained for in agreeing to create the Partnership in the first place.  Moreover, it was always intended that the Apartment Complex would continue as affordable housing for elderly persons of very low and low incomes, even after the conclusion of the 15-year tax credit compliance period, and that this would be accomplished by transferring ownership of the Apartment Complex back to Presbyterian following the conclusion of the 15-year tax credit compliance period.

47.     Upon information and belief, neither PV North nor Pathway considered the best interests of the Partnership and SHF 1050 in considering whether to accept Lockwood's sham offer.  Neither PV North nor Pathway undertook a reasonable appraisal of the Apartment Complex, obtained any legal opinion concerning tax consequences from its sale as required by Section 17.01 of the Partnership Agreement, obtained the express consent of SHF 1050 as required by Section 8.02(b) thereof, or investigated other consequences to the Partnership and SHF 1050 of a sale.

**ANSWER:**

In response to the allegations of this paragraph, Defendants deny that Lockwood's offer to purchase is a "sham," deny Plaintiff's self-serving mischaracterizations of that offer and deny the allegation that they failed to consider the best interests of the Partnership and SHF 1050 in responding to Lockwood's offer to purchase.  It is admitted that neither PV

33

North nor Pathway undertook to obtain any appraisal of the Apartment Complex prior or subsequent to receiving Lockwood's offer to purchase.  Further responding, Defendants state that no provision of the Partnership Agreement requires that they obtain such an appraisal. Defendants deny as untrue the allegation that neither PV North nor Pathway obtained any legal opinion concerning tax consequences from a sale of the Apartment Complex as required by §17.01 of the Partnership Agreement.  Defendants deny as untrue Plaintiff's allegation that §8.02(b) of the Partnership Agreement requires them to obtain the express consent of SHF 1050.  Further responding, Defendants state that §8.02(b)(i) of the Partnership Agreement provides that the General Partner shall not sell or otherwise dispose of all or any material portion of the assets of the Partnership without the consent of SHF 1050 "<u>except as provided in Article 17 hereof</u>."  Defendants deny as untrue Plaintiff's allegation that neither PV North nor Pathway investigated other consequences to the Partnership and SHF 1050 of a sale. Defendants deny as untrue any and all remaining allegations contained in this paragraph not specifically addressed above.


48.     Despite the failure to satisfy the conditions required by the Partnership Agreement for the triggering and exercise of the ROFR, the sham nature of Lockwood 's purported offer, the lack of consent by SHF 1050 as the majority Partner, and the failure to meet any and all other conditions required in connection with a proper exercise of the ROFR, on June 3, 2019 Presbyterian represented that it intended to exercise the ROFR granted under the Partnership Agreement and that it intended to proceed with a transaction of purchase and sale of the Apartment Complex. Neither Pathway nor PV North have objected to Presbyterian's purported

34

exercise of the ROFR, nor have they taken any other action to protect the interests of the Partnership or SHF 1050.

**ANSWER:**

**Defendants deny as untrue Plaintiff's self-serving mischaracterizations of Lockwood's offer to purchase the Apartment Complex and the supposed "conditions required by the Partnership Agreement for the triggering and exercise of the ROFR." Defendants further deny as untrue that the exercise of the ROFR requires consent by SHF 1050, and Defendants deny as untrue the allegation that they failed to meet any and all terms and conditions required by the Partnership Agreement in connection with a proper exercise of the ROFR. Defendants admit that on or about June 3, 2019 Presbyterian notified the Partnership, in writing, that it intended to exercise the ROFR as provided in §17.03 of the Partnership Agreement. Presbyterian's June 3, 2019 letter speaks for itself, and a copy of that letter is attached hereto as Exhibit C. Defendants admit that neither Pathway nor PV North have objected to Presbyterian's exercise of its ROFR rights. Further responding, Defendants deny that Pathway or PV North have any duty or obligation to object to Presbyterian's proper and lawful exercise of rights granted to it under the ROFR, and Defendants deny that they have failed to protect the interests of the Partnership or SHF 1050 under these circumstances.**

### AS AND FOR A FIRST CAUSE OF ACTION
(Declaratory Judgment)

49.    Plaintiff repeats and re-alleges each and every allegation set forth in the foregoing paragraphs "1" through "48" as if set forth fully herein.

35

**ANSWER:**

**Defendants reallege and incorporate by reference their responses to paragraphs 1 –**
**48 above as if set forth fully herein.**

50.     Pursuant to 28 U.S.C. § 2201, this Court may render a declaratory judgment
having the effect of a final judgment as to the rights and other legal relations of the parties to a
justiciable controversy whether or not further relief is or could be claimed.

**ANSWER:**

**In response to the allegations of this paragraph, Defendants state that the cited**
**statute, 28 U.S.C. §2201, speaks for itself and therefore no response is required.  To the**
**extent a response may be required by this Honorable Court, the Defendants admit that the**
**cited statute permits this Court to render a declaratory judgment having the effect of a**
**final judgment as to the rights and other legal relations of the parties to a justiciable**
**controversy.**

51.     There is presently a concrete and justiciable legal dispute between the parties
concerning their legal rights, obligations, and standing under the terms of the Partnership
Agreement, the laws of Michigan, the Internal Revenue Code, regulations and rules promulgated
to implement the UHTC program, and Congressional intent.

**ANSWER:**

**Defendants admit that there is presently a justiciable legal dispute between the**
**parties concerning their legal rights and obligations toward one another, as described in**

36

the preceding paragraphs.  Except as so admitted, Defendants deny any remaining allegations set forth in this paragraph.

52.       In particular, Section 42( i)(7) of the Code provides:

Impact of tenant's right of lst refusal to acquire property.

(A) In general. No Federal income tax benefit shall fail to be allowable to the taxpayer with respect to any qualified low- income building merely by reason of a right of 1st refusal held by the tenants (in cooperative form or otherwise) or resident management corporation of such building or by a qualified nonprofit organization (as defined in subsection (h)(5)(C)) or government agency to purchase the property after the close of the compliance period for a price which is not less than the minimum purchase price determined under subparagraph (B).

(B) Minimum purchase price. For purposes of subparagraph (A), the minimum purchase price under this subparagraph is an amount equal to the sum of—

(i)       the principal amount of outstanding indebtedness secured by the building (other than indebtedness incurred within the 5-year period ending on the date of the sale to the tenants) , and·

(ii)      all Federal, State, and local taxes attributable to such sale.

Except in the case of Federal income taxes, there shall not be taken into account under clause (ii) any additional tax attributable to the application of clause (ii).

**ANSWER:**

Defendants admit that this paragraph sets forth the language of Internal Revenue Code §42(i)(7).  Except as so admitted, Defendants deny any and all remaining allegations contained in this paragraph.

53.       Upon information and belief, Defendants believe that the terms of Section 42(i)(7) trump, displace, or preempt both the terms of the Partnership Agreement and Michigan

law concerning the well-established meaning of an ordinary right of first refusal. Defendants' position disregards the requirements, under Michigan law and the Partnership Agreement, concerning a bona fide third-party offer to purchase, the seller's honest intent to sell to a third party, the seller's genuine interest in the third party's offer, and the consent necessary by the partner holding the overwhelming percentage of all partnership interests to request a sale.

**ANSWER:**

**Defendants deny the allegations of this paragraph as untrue. Further responding, Defendants affirmatively state that they have acted in accordance with the terms and conditions of Article 17 of the Partnership Agreement and the ROFR set forth therein. And it is in fact Plaintiff who has breached the Partnership Agreement, as well as its duties and obligations to Pathway and PV North as partners in the Partnership, by improperly and unlawfully failing to follow the clear and unambiguous terms of that Partnership Agreement.**

54.     SHF 1050 believes that the explicit words " right of first refusal" in Section 42(i)(7) accept, assume, adopt, incorporate, and/or are consistent with the long-established meaning and understanding of rights of first refusal in the common law of Michigan and should be interpreted consistent therewith.

**ANSWER:**

**This paragraph does not contain any allegations of fact, but merely sets forth Plaintiff's own self-serving conclusions of law to which no response is required. To the extent that a response may be required by this Honorable Court, Defendants deny these allegations.**

55.     Indeed, the legislative history of Section 42 reveals that Congress specifically considered, and rejected, terms that would have defined or authorize d the granting of an "option" in lieu of a "right of first refusal." Congress considered the differences between these two terms as understood consistently in the common law.

**ANSWER:**

**Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations regarding the legislative history of I.R.C. §42.  Further responding, Defendants affirmatively state that Plaintiff's summary of such legislative history is, in any event, unnecessary and irrelevant, as the clear and unambiguous language of the statute is the best evidence of congressional intent in enacting the same.**

56.     Defendants also disregard the clear and unambiguous terms of the Partnership Agreement, which include an explicit request from SHF 1050 to sell the Apartment Complex, a bona fide third-party offer to purchase the Apartment Complex and a legal opinion that is satisfactory to SHF 1050.

**ANSWER:**

**Defendants deny these allegations as untrue.  Further responding, Defendants affirmatively state that there is no requirement in the Partnership Agreement for an explicit request from SHF 1050 to sell the Apartment Complex.  Defendants further affirmatively state that they received a bona fide third party offer to purchase the Apartment Complex from Lockwood, and Defendants provided an opinion of legal counsel which comports with the requirements of Article 17 in the Partnership Agreement;**

**however, Plaintiff has unreasonably refused to accept this legal opinion, in violation of the**

**clear and unambiguous terms of the Partnership Agreement.**

57.    In addition, Defendants are not entitled to exercise the ROFR because of their

unclean hands. Upon information and belief, Defendants engaged in in equitable, bad faith and

unjust conduct by soliciting Lockwood to provide a sham offer for the so le purpose of triggering

the ROFR in exchange for undisclosed inducements.

**ANSWER:**

**The allegations of this paragraph are denied as untrue.**

58.    Accordingly, SHF 1050 is entitled to a judgment declaring that Presbyterian

may not unilaterally exercise the ROFR granted in the Partnership Agreement, unless and until

all the conditions necessary for the exercise of a right of first refusal under the law of Michigan

and the Partnership Agreement have been satisfied, and presently, there are no conditions

triggering the ROFR.

**ANSWER:**

**The allegations of this paragraph are denied as untrue.  Further responding,**

**Defendants affirmatively state that they are entitled to a judgment declaring that**

**Presbyterian has properly exercised its ROFR rights under Article 17 of the Partnership**

**Agreement, and that SHF 1050 has unreasonably and unjustifiably refused to accept and**

**agree to the sale of the Apartment Complex to Presbyterian under the terms of the ROFR,**

**in violation of the terms of the Partnership Agreement and also in violation of SHF 1050's**

duties as a limited partner of the Partnership.

## AS AND FOR A SECOND CAUSE OF ACTION
(Breach of Contract - Event of Default)

59.     SHF 1050 repeats and re-alleges each and every allegation set forth in the foregoing paragraphs "l" through "58" as if set forth fully herein.

**ANSWER:**

**Defendants reallege and incorporate by reference their responses to paragraphs 1 – 58 above as if set forth fully herein.**

60.     The Partnership Agreement constitutes a valid and enforceable written contract between SHF 1050 and the Defendants.

**ANSWER:**

**Defendants admit only that the Partnership Agreement constitutes a legally enforceable agreement between SHF 1050, Pathway, and PV North.  Defendants further admit that Presbyterian, although not a party to the Partnership Agreement, is granted certain rights thereunder, including, but not necessarily limited to, the ROFR right set forth in Article 17 of the Partnership Agreement.  Except as so admitted, Defendants deny the allegation of this paragraph.**

61.     SHF 1050 has performed all of its obligations under the Partnership Agreement.

**ANSWER:**

**Defendant deny the allegations of this paragraph.**

41

62.     Through their explicit and unequivocal words and deeds, Defendants have definitively repudiated their obligations and duties under the Partnership Agreement to take all actions necessary and appropriate to protect the interests of SHF 1050 as the Limited Partner holding 99.99 percent of the partnership interests in the Partnership and to refrain from taking any actions which are not authorized or granted under the Partnership Agreement.

**ANSWER:**

**Defendants deny the allegations of this paragraph.   Further responding, Defendants state that they have always protected the interests of SHF 1050 as the limited partner, pursuant to the intent of the transaction as described in the parties' letters of intent and as set forth in the terms of the Partnership Agreement.**

63.     Defendants' unequivocal repudiation of their current and future obligations under the Partnership Agreement constitutes a breach of the Partnership Agreement and an Event of Default by them thereunder.

**ANSWER:**

**Defendants deny the allegations of this paragraph.**

64.     As the direct result of Defendants' repudiation and breach of the Partnership Agreement, SHF 1050 is presently incurring and will incur damages and other harm in an amount to be proved at trial.

**ANSWER:**

**Defendants deny the allegations of this paragraph.**

42

65.      Accordingly, SHF 1050 is entitled to a judgment in the amount of SHF 1050's present and future damages and/or a judgment granting specific performance precluding any transfer or sale of the Apartment Complex to Presbyterian pursuant to the ROFR, unless all necessary conditions for the ROFR are satisfied.

**ANSWER:**

**Defendants deny the allegations of this paragraph.**

### AS AND FOR A THIRD CAUSE OF ACTION
(Breach of Covenant of Good Faith and Fair Dealing)

66.      SHF 1050 repeats and re-alleges each and every allegation set forth in the foregoing paragraphs "l" through "65" as if set forth fully herein.

**ANSWER:**

**Defendants reallege and incorporate by reference their responses to paragraphs 1 – 65 above as if set forth fully herein.**

67.      By virtue of the Partnership Agreement, SHF 1050 and each of the Defendants are parties to a contract.

**ANSWER:**

**Defendants admit only that the Partnership Agreement constitutes a legally enforceable agreement between SHF 1050, Pathway, and PV North. Defendants further admit that Presbyterian, although not a party to the Partnership Agreement, is granted certain rights thereunder, including, but not necessarily limited to, the ROFR right set forth in Article 17 of the Partnership Agreement. Except as so admitted, Defendants deny the allegations of this paragraph.**

43

68.     Each party to a contract has an implied duty and obligation not to act dishonestly, corruptly, or otherwise in bad faith such as to destroy the bargained and anticipated benefits or fruits of the contract for any other party to the contract.

**ANSWER:**

**This paragraph does not set forth any allegations of fact, but merely recites Plaintiff's own self-serving conclusions of law to which no response is required.  To the extent a response may be required by this Honorable Court, Defendants deny the same.**

69.     SHF 1050 has performed all of its obligations under the Partnership Agreement and has conducted itself, with respect to the Defendants, at all times in good faith and in a fair manner.

**ANSWER:**

**Defendants deny the allegations of this paragraph.**

70.     Defendants' conduct is contrary to the purposes of the Partnership Agreement and presently or imminently threatens to destroy certain of SHF 1050's bargained and  negotiated benefits from its interest in the Partnership, which SHF 1050 has or had previously enjoyed as a result of the parties' bargained agreement.

**ANSWER:**

**Defendants deny the allegations of this paragraph.**

44

71.    Accordingly, SHF 1050 is entitled to a judgment against Defendants in an amount to be proved at trial and/or an injunction to restrain and enjoin Defendants' breaches of the covenant of good faith and fair dealing.

**ANSWER:**

**Defendants deny the allegations of this paragraph.**

### AS AND FOR A FOURTH CAUSE OF ACTION
(Breach of Fiduciary Duty and Waste)

72.    SHF 1050 repeats and re-alleges each and every allegation set forth in the foregoing paragraphs "l" through "7 1 " as if set forth fully herein.

**ANSWER:**

**Defendants reallege and incorporate by reference their responses to paragraphs 1 – 71 above as if set forth fully herein.**

73.    PV North and Pathway entered into a partnership with SHF 1050, and each partner has duties of utmost good faith, honesty, fairness, loyalty, and to avoid self-dealing. In addition, managing partners owe duties of diligence, due care, and undivided loyalty to manage all assets and the business of the partnership for the benefit of the partners.

**ANSWER:**

**Defendants admit only that PV North and Pathway entered into a limited partnership with SHF 1050. The remainder of this paragraph does not contain any allegations of fact, but merely sets forth Plaintiff's own self-serving conclusions of law, to**

**which no response is required.**

74.     PV North's and Pathway's actions undertaken to dispose of substantially all property and assets of the Partnership, for less than fair value, over the express objection of SHF 1050 and in violation of the terms of the ROFR granted to Presbyterian, constitute breaches of PV North's and Pathway's fiduciary duties owed to SHF 1050, unclean hands, as well as waste of the assets of the Partnership.

    <u>**ANSWER:**</u>

    **Defendants deny the allegations of this paragraph.**

75.     As a direct result of PV North's and Pathway's breaches, SHF 1050 has suffered and continues to suffer damage s as well as i r reparable harm to its rights as partner and holder of no less than 99.99 percent of the interests in the Partnership.

    <u>**ANSWER:**</u>

    **Defendants deny the allegations of this paragraph.**

76.     Accordingly, SHF 1050 is entitled to a judgment in an amount of damages to be proved at trial and/or an injunction restraining the conduct of PV North and Pathway.

    <u>**ANSWER:**</u>

    **Defendants deny the allegations of this paragraph.**

**WHEREFORE,** Defendants Pathway, PV North and Presbyterian respectfully request that this Honorable Court enter judgement in their favor and against Plaintiff as follows:

A.   On the First Cause of Action, entering a judgment declaring that:

    (1)   Defendants have satisfied all terms and conditions for the exercise of the right of first refusal set forth in Article 17 in the Partnership Agreement; and

    (2)   Plaintiff has improperly and unlawfully breached the Partnership Agreement and is prohibited from interfering in Defendants' exercise of their right of first refusal under the Partnership Agreement.

B.   On the Second Cause of Action, a judgment of no cause for action in favor of Defendants and against Plaintiff;

C.   On the Third Cause of Action, a judgment of no cause for action in favor of Defendants and against Plaintiff;

D.   On the Fourth Cause of Action, a judgment of no cause for action in favor of Defendants and against Plaintiff; and

E.   Awarding Defendants such other and further relief as the Court deems equitable and just under the circumstances, including, but not necessarily limited to, an award of actual costs and attorneys' fees so wrongfully incurred in having to defend this matter.

## <u>AFFIRMATIVE and OTHER DEFENSES</u>

**NOW COME** Defendants, by and through their counsel, LOOMIS, EWERT, PARSLEY, DAVIS & GOTTING, P.C., and pursuant to Fed. R. Civ. P. 8(c) and 12(b) state that they may rely upon one or more of the following defenses upon the trial of this matter, if any:

A.      Defendants have properly followed all terms and conditions of the Partnership Agreement for exercise of the ROFR; therefore, Plaintiff's claim must fail.

B.      It is Plaintiff who has breached its duties and obligations under the Partnership Agreement, by wrongfully objecting to and seeking to prevent the lawful exercise of the ROFR under the Partnership Agreement.

C.      It is Plaintiff which has breached its duties of good faith and fair dealing and its fiduciary duties owed to Defendants as limited partners of the Partnership, by its conduct in wrongfully objecting to and attempting to prevent the exercise of the ROFR.

D.      Defendants reserve the right to add to or amend these defenses in the future as additional facts may become known to them in the course of discovery in this matter.


                                    Respectfully submitted,


                                    /s/   *Kevin J. Roragen*                  /
                                    Kevin J. Roragen (P56510)
                                    LOOMIS, EWERT, PARSLEY,
                                       DAVIS & GOTTING, P.C.
                                    Attorneys for Defendants
                                    124 West Allegan, Suite 700
                                    Lansing, MI 48933
                                    (517) 482-2400
                                    kjroragen@loomislaw.com

                                    Dated:  September 20, 2019