UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SUNAMERICA HOUSING FUND 1050, A NEVADA LIMITED PARTNERSHIP, a Nevada limited partnership,<br><br>        Plaintiff,<br><br>v.<br><br>PATHWAY OF PONTIAC, INC., et al.,<br><br>        Defendants. | Case No. 2:19-cv-11783-AJT-MKM |

### MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF
### SUNAMERICA HOUSING FUND 1050, A NEVADA LIMITED PARTNERSHIP

Plaintiff SunAmerica Housing Fund 1050, A Nevada Limited Partnership ("SHF 1050" or "Plaintiff"), by its undersigned counsel and pursuant to Fed. R. Civ. P. 56, respectfully moves for entry of summary judgment against Defendants Pathway of Pontiac, Inc. ("Pathway"), PV North LLC ("PV North"), and Presbyterian Village North ("Presbyterian" and, collectively, "Defendants"), as to all counts of SHF 1050's Complaint, all affirmative defenses asserted by Defendants, and as to Counts I and III of Defendants' Counterclaim against SHF 1050.[1] In support hereof, Plaintiff states:

### Background

1.  This case involves a dispute among partners (and an affiliate of a partner) in the Pontiac ILF Limited Dividend Housing Association Limited Partnership (the "Partnership"), a

---

[1] Pursuant to Local Rule 7.1(a), Plaintiff sought concurrence before filing this motion. There was a conference between the attorneys for the parties during which Plaintiff's counsel explained the nature of the motion, its legal basis, and the relief sought, and during which Plaintiff requested, but did not obtain, concurrence in the relief sought.

limited partnership formed pursuant to the Michigan Uniform Limited Partnership Act, MCL 449.1101 *et seq.*

2. Defendants PV North and Pathway (collectively, the "General Partners") are co-general partners in the Partnership and collectively own .01% of the interests in Partnership. Plaintiff SHF 1050 is the sole limited partner and owns 99.99% of the interests in the Partnership. Presbyterian is not a partner, but is a Michigan non-profit corporation affiliated with PV North.

3. The Partnership is governed by an Amended and Restated Agreement of Limited Partnership, effective as of September 1, 2002 (Ex. 1, the "Partnership Agreement"), as amended. The Partnership Agreement is governed by Michigan law. ECF 1-1, PageID 20, 91.

4. The Partnership was formed to acquire, rehabilitate, own, and operate a multi-family residential building (the "Property") and thereby provide low-income housing to qualified individuals pursuant to the Low Income Housing Tax Credit ("LIHTC") program established under Section 42 of the Internal Revenue Code, 26 U.S.C. § 42, and regulations thereunder.

5. Pursuant to the LIHTC program, the Property was required to be operated as low-income housing for a period of 15 years (the "Compliance Period").

6. Section 42 of the Code contains a "Safe Harbor" provision that allows (but does not require) the project owner to grant a "right of 1st refusal" to a qualifying nonprofit organization, tenant association, or governmental agency, potentially permitting it to purchase the project after the end of the Compliance Period for a statutorily-described "minimum purchase price," which is equal to outstanding debt plus certain taxes. 26 U.S.C. § 42(i)(7)(A), (B).

7. In this case, Article 17 of the Partnership Agreement granted a conditional right of first refusal (the "ROFR") in favor of Presbyterian effective at the conclusion of the Compliance Period. Provided that all conditions were met, the ROFR entitled Presbyterian to purchase the

Property for the statutory minimum purchase price. At the time the ROFR was granted in 2002, the parties did not know whether the minimum purchase price at the end of the Compliance period, fifteen years later, would be above or below the Property's fair market value.

8. Under the Partnership Agreement and Michigan law, Presbyterian could not exercise the ROFR unless and until certain conditions were met, including, *inter alia*, that the Partnership formed a sincere and genuine intent to sell the Property, and receipt by the Partnership of a *bona fide* third party offer to purchase the Property. The uncontroverted evidence establishes that neither of those conditions was met here.

9. Article 17 of the Partnership Agreement also granted Presbyterian a unilateral option to purchase the Property at the end of the Compliance period by paying the **greater** of (i) the minimum purchase price, or (ii) the fair market value of the Property (the "Option"). The Option did not require the Partnership to form an intent to sell the Property or that it receive a *bona fide* third party offer; it was exercisable in accordance with its terms at the discretion of Presbyterian, although the price was different from the minimum purchase price set forth in the ROFR.

### Defendants Attempt to Trigger the ROFR by Deceit

10. At the end of the Compliance Period, Presbyterian expressed a desire to exercise the ROFR notwithstanding that the Partnership had not formed an intent to sell the Property, and had not received any *bona fide* offers to purchase the Property.

11. In response, SHF 1050 informed all Defendants that it objected to any unilateral attempt by Presbyterian to exercise the ROFR, and to any sale of the Property as it had no intent to sell.

12. Thereafter, rather than purchasing the Property at fair market value pursuant to its Option, Presbyterian, working with its affiliate General Partners, instead attempted to "self-trigger" its ROFR, and thereby compel a below-market sale of the Property at the minimum purchase price, through contrived and false circumstances to its benefit and the detriment of SHF 1050.

13. The uncontroverted evidence establishes that Presbyterian and the General Partners solicited a sham "offer" from a friendly source, Lockwood Development Company ("Lockwood"), based on a representation to Lockwood by the General Partners that its offer would be used solely as a pretense to trigger Presbyterian's ROFR, after which the "offer" would be rejected. Defendants also provided Lockwood with advice from their legal counsel regarding the need for any offer to be "binding" and appear *bona fide*, so that it could be used as a basis to exercise the ROFR, after which the offer would be "rejected."

14. On that basis, Lockwood provided Defendants with a draft purchase agreement (the "Lockwood Proposal"), which contains an express provision permitting Lockwood to terminate the agreement for any reason or no reason within sixty days of acceptance. In short, the Lockwood Proposal did not even meet the standard of a "binding" contract that Lockwood had been coached to provide and was not an "offer" capable of being accepted as required to trigger the ROFR.

15. Thereafter, the General Partners advised SHF 1050 of the Lockwood Proposal without disclosing the manner in which it was obtained, or that the General Partners had informed Lockwood that they intended to use the proposal simply as an excuse to trigger the ROFR and that it was not a real offer.

16. Not surprisingly, the Partnership never accepted the Lockwood Proposal.

**Presbyterian Had No Basis to Exercise the ROFR**

17.  The Partnership Agreement expressly conditioned Presbyterian's exercise of the ROFR on the Partnership receiving a *bona fide* offer. The Lockwood Offer was not a *bona fide* offer within the requirements of the ROFR and was, in fact, a sham contrived to deprive SHF 1050 of substantial value flowing from the Property, including long-term appreciation of the Property.

18.  Moreover, under Michigan law, "[a] right of first refusal, or preemptive right, is a conditional option to purchase dependent on the landowner's desire to sell." Randolph v. Reisig, 727 N.W.2d 388, 391 (Mich. Ct. App. 2007). Here, the Partnership never formed the requisite intent to sell the Property.

19.  The record is devoid of evidence that the Partnership or General Partners undertook any efforts to market or list the Property for sale, retain a real estate broker or agent, obtain an appraisal or opinion of value, evaluate market conditions, obtain the approval of SHF 1050 (the majority owner) to market and sell the Property, or any other indicia that would normally evidence an intent to sell on the part of the Partnership (such as a Partnership resolution or directive of the limited partner).

20.  Likewise, there is no evidence that the Partnership formed an intent to sell to Lockwood specifically. The uncontroverted evidence establishes that while a sham "offer" was solicited from Lockwood, the General Partners did not, and never intended to, accept that offer or otherwise use it for any purpose other than as an excuse for Presbyterian to exercise the ROFR.

21.  Also, the Partnership Agreement expressly required written consent from Plaintiff SHF 1050 before the Property could be sold to a third party such as Lockwood. SHF 1050 did not consent to any sale of the Property, further demonstrating that the Partnership did not consent to a sale to Lockwood, or to anyone else, prior to Presbyterian's purported exercise of the ROFR.

22. Consequently, the prerequisites of the ROFR have not been satisfied and Presbyterian's purported attempt to trigger and exercise the ROFR is ineffective.

23. Presbyterian's affiliate, PV North, and the other general partner, Pathway—despite their own knowledge that the third party "offer" was a sham—have nonetheless acknowledged, supported, and advanced Presbyterian's exercise of the ROFR as valid and indicated their intent to proceed with a sale of the Partnership's Property to Presbyterian, contrary to the interests of SHF 1050.

24. Defendants' contention that Presbyterian can unilaterally trigger and exercise the ROFR without SHF 1050's agreement to market and sell the Property, and without satisfying conditions precedent, is inconsistent with the Partnership Agreement and Michigan law and, if given effect, would also render the market-value Option held by Presbyterian superfluous as there would be no reason for Presbyterian to ever use it.

25. Defendants' contention, if given effect, also would be contrary to the express purposes stated in the Partnership Agreement, contrary to Section 42(i)(7) of the Internal Revenue Code, and could jeopardize or destroy the benefits for which SHF 1050 bargained when it entered into that agreement.

**The General Partners Violated Their Contractual and Fiduciary Duties to Plaintiff**

26. Pursuant to Michigan law, the General Partners owe a fiduciary duty to their limited partner, SHF 1050. MCL 449.1403(b); 449.21(a).

27. Also, Articles 3 and 8 of the Partnership Agreement expressly required the General Partners to take all actions necessary to protect the interests of the limited partner, SHF 1050, specifically including SHF 1050's interest in the long-term appreciation of, and continued

distribution of income from, the Property. Thus, the General Partners were required to put SHF 1050's interests first, before those of the General Partners and their affiliate, Presbyterian.

28.  In breach of these contractual and fiduciary duties, the General Partners participated in a scheme designed to compel a below-market sale of the Property to their affiliate, Presbyterian, with knowledge that the conditions precedent to the ROFR had not been met, and based on a sham, pre-textual expression of interest from a third party.

29.  The General Partners further breached their contractual and fiduciary duties by failing to disclose to SHF 1050 that Lockwood had been informed, prior to making its proposal, that the proposal was going to be used merely as a pretense to exercise the ROFR, after which the proposal would be rejected.

30.  The General Partners' efforts, if given effect, would deprive SHF 1050 of its interests in ongoing income and long-term appreciation of the Property—two of SHF 1050's interests that the General Partners expressly agreed to protect—by essentially giving the fully appreciated Property to their affiliate. This constitutes a clear violation of the General Partners' contractual and fiduciary duties to SHF 1050.

### **Defendants Failed to Adduce Evidence of a Breach by Plaintiff**

31.  Notwithstanding the allegations of their Counterclaim, the Defendants have failed to adduce evidence tending to demonstrate any breach on the part SHF 1050.

32.  The only breach asserted by Defendants is SHF 1050's purported refusal to consent to Presbyterian's exercise of the ROFR, and SHF 1050's filing of this lawsuit and a related *lis pendens*.

33.     Defendants have failed to adduce any evidence demonstrating that Presbyterian's exercise of the ROFR is valid or enforceable, much less that SHF 1050 committed a breach by refusing to acknowledge such exercise.

### Conclusion

For all of the foregoing reasons, as more fully set forth in its supporting Memorandum of Law, Plaintiff respectfully requests that the Court grant summary judgment in its favor and:

A. That the Court enter a declaratory judgment finding: (i) the right of first refusal granted to Presbyterian in the Partnership Agreement is subject to the common law and contractual conditions precedent identified herein; (ii) 26 U.S.C. § 42(i)(7) does not modify those requirements; and (iii) Defendants have not demonstrated that the Partnership formed an intent to sell the Property, nor did it receive a *bona fide* offer to purchase the Property, and that these are prerequisites to a valid exercise of the right of first refusal by Presbyterian;

B. That the Court enter an order finding that the General Partners have breached the Partnership Agreement as well as their fiduciary duties to Plaintiff, allowing Plaintiff to enforce its contractual remedies under the Partnership Agreement against the General Partners for such breaches;

C. That the Court enter an order enjoining any sale of the Property to Presbyterian under the right of first refusal;

D. That the Court declare the right of first refusal null and void as it has now expired by its own terms;

E. That the Court award Plaintiff such damages and costs as the Court deems appropriate, that Plaintiff be given the opportunity to present proofs as to its damages and costs; and

F. That the Court grant such other and further relief as it deems just.

Dated: July 29, 2020                         Respectfully submitted,

**NIXON PEABODY LLP**

/*s*/ Keith E. Edeus, Jr.
Keith E. Edeus, Jr.
Nixon Peabody, LLP
70 W. Madison, Suite 3500
Chicago, Illinois 60602

*OF COUNSEL*
Louis E. Dolan, Jr.
Nixon Peabody, LLP
799 9th Street NW, Suite 500
Washington, DC 20001-5327

*Attorneys for Plaintiff SunAmerica Housing Fund 1050, A Nevada Limited Partnership*