UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SUNAMERICA HOUSING FUND 1050, A NEVADA LIMITED PARTNERSHIP, a Nevada limited partnership,<br><br>        Plaintiff,<br><br>v.<br><br>PATHWAY OF PONTIAC, INC. et al.,<br><br>        Defendants. | Case No. 2:19-cv-11783-AJT-MKM |

**EXHIBIT 4**

**MAY 2, 2019 EMAIL TO LOCKWOOD**

| | |
|---|---|
| **From:** | Carnaghi, Brian <BCarnaghi@PVM.org> |
| **Sent:** | Thursday, May 2, 2019 1:02 PM |
| **To:** | Mark Lockwood; Kevin Roragen |
| **Cc:** | Finis, Jerry (JFinis@pathwaytoliving.com); Michael G. Stefanko; 'Colin M. Callaghan (colin.callaghan@berkadia.com)' (colin.callaghan@berkadia.com) |
| **Subject:** | Pontiac ILF |
| **Attachments:** | Pontiac LOI_032719.docx |

Hello Mark,  thanks for the exchange on this matter last week.  Please see initial LOI.

By way of this e-mail, I am asking Kevin to copy all on his recent communications comments/suggestions on ways to strengthen the offer.  I cannot find this in my e-mails or correspondence.

Please call if you have questions.

While Lockwood is formulating this, I believe we will move forward with sending LP the initial LOI, and let them know another offer might be forthcoming.  Then we will next put the ROFR to the LP.

Thanks, B



March 27, 2019

Brian Carnaghi
Presbyterian Villages of Michigan
26200 Lahser Road, Suite 300
Southfield, Michigan  48033

Subject: **Village of Oakland Woods I, Pontiac, MI – Letter of Intent**

Dear Brian:

We truly appreciate the opportunity to provide you with this offer to purchase the Village of Oakland Woods I, and present this non-binding Letter of Intent for your consideration.  The Michaels Organization ("TMO" or "we") or its affiliated assignee ("Purchaser") is interested in acquiring from Pontiac ILF LDHA LP and/or its affiliate ("Seller") the Village of Oakland Woods, comprising 150-units, located at 420 S Opdyke Rd, Pontiac, MI 48341 (the "Property").  This letter of intent ("LOI") is an outline of the terms, conditions and contingencies to be negotiated in a Purchase and Sale Agreement ("PSA").  This is a non-binding letter of intent, to which neither party shall be bound.  Notwithstanding either party's execution hereof, nothing in this letter shall create a legally enforceable contract and no party shall be bound to anything unless and until a definitive purchase agreement has been fully negotiated, drafted and executed by both parties.  This letter is therefore for discussion only and no party shall have any obligation to continue negotiations.

We are excited to present this offer and believe that we present the greatest likelihood of success and clearest path to a successful closing.  We respectfully submit the following terms for your consideration.

1. **Purchase Price:  Five Million Two Hundred Thousand Dollars ($5,200,000).**

2. **Deposit:**  Purchaser shall deposit One Hundred Thousand Dollars ($100,000) (the "Deposit") with Marlton Abstract Agency, LLC ("Escrow Agent").  Stewart Title Guarantee Company shall act as the title agent ("Title Agent") for the transaction.  The Initial Deposit shall be fully refundable to Purchaser should it decide not to proceed with the transaction for any reason during the Due Diligence Period, as herein defined

below.  Purchaser shall obtain a commitment for new financing within the Due Diligence Period, which shall not remain an added contingency.  Purchaser must provide written release of all contingencies for Initial Deposit to become non-refundable.  The Deposit shall be applied to the Purchase Price at Closing.  The Deposit shall be fully refundable after the Due Diligence Period should the transaction fail to close due to the action or inaction of the Seller or if the required Consents, as hereinafter defined, are either not obtained or if such consents are conditioned in such a way that is not acceptable to the Purchaser, in its sole discretion.

3. **Due Diligence Period:**  Purchaser shall have forty-five (45) days from the later of the effective date of the PSA or receipt of all due diligence items listed in Exhibit A attached hereto ("Due Diligence Period") to review such items, and to make and/or cause third parties to make physical inspections of the Property at the Purchaser's expense.  Purchaser and its third parties shall be granted access to the Property through Closing upon reasonable notice to Seller in order to determine if the Property is suitable, in Purchaser's sole discretion, for Purchaser to purchase the Property.  Purchaser shall be entitled to make such tests and surveys and do such other things as Purchaser, in its sole discretion, may deem necessary in making such determination.

4. **Closing:**  The closing shall occur at the later of (i) fifteen (15) days after the expiration of the Due Diligence Period, or (ii) fifteen (15) days after the last Required Consent is obtained ("Closing").  Seller shall cause the existing management agreement to be terminated upon closing.

5. **Closing Costs**:  Transaction costs shall be paid in accordance with local custom as set forth below:

   Purchaser shall be responsible for the following:
   - Its Due Diligence Costs
   - Costs and fees associated with obtaining any Consents
   - Costs of obtaining new financing
   - Base premium associated with the issuance of Owner's policy of title insurance and cost of the search associated with such policy
   - Costs associated with the issuance of Lenders' policies of title insurance, or any endorsement to an existing Lender's policy of title insurance
   - Cost of updating the Survey
   - Half of any closing or escrow fees charged by the Title Company

Seller shall be responsible for the following:

- Cost of the Existing Survey to be provided by Seller
- Costs of curing all Title Objections for which Seller may be responsible
- Any and all brokerage commissions
- Any recording fees and prepayment penalties associated with release of Seller's mortgages
- Any and all state and local transfer and other taxes payable in connection with recording the deed upon the transfer of the assets
- Half of any and all closing or escrow fees charged by the Title Company

Each party shall be responsible for its own legal and accounting costs.  All other costs and expenses incident to this transaction and the closing shall be paid by the party incurring same.

6. **Consents:**  We will endeavor and expect Seller's full cooperation to obtain all relevant federal, state, local consents (collectively, the "Consents") within the Due Diligence Period, including but not limited to MSHDA approval of the proposed transaction.

7. **Pro-rations**:  All items of operating income and expense including, without limitation, real estate taxes and personal property taxes, will be pro-rated as of the day of Closing, in accordance with local practice.  Pro-rations of all rents (including pre-paid rents) shall be handled on an as-collected basis. At Closing, the Seller will transfer to the Buyer all tenant security deposits and other normal escrows and reserves.

8. **No Marketing of Property:**  From the date of mutual execution of this LOI until the Closing, unless the negotiations of the PSA are terminated by the parties or the Buyer elects to terminate the PSA during the Due Diligence Period, Seller agrees to remove the Property from the market and shall not enter into any negotiations or agreements with third parties regarding sale of the Property or any portion of or right in the Property.

9. **Ongoing Operations:**  Seller shall continue to operate the Properties until Closing in a consistent manner as was done in the past.  Seller shall not further encumber the Properties.  Seller shall take commercially reasonable efforts to maintain occupancy and collections at levels at or above current levels from the date of this letter through Closing.  In the event that there is a materially adverse change to occupancy and/or collections, Purchaser shall be able to cancel the Agreement and receive a return of its Deposit.  All units shall be made ready for occupancy as of the day of Closing.

10. **No Litigation:** There will be no litigation at the Property as of Closing, except in the case of litigation with tenants limited to typical landlord / tenant disputes and no other litigation unless it is adequately insured or bonded over. There shall be no Fair Housing, Discrimination or similar issues at Closing. There shall be no regulatory issues at Closing that could materially affect the Purchaser.

We look forward to working with you to complete this transaction. Please do not hesitate to reach out to us if you have any further questions.

Sincerely,


Warren F. Horvath
Vice President
The Michaels Organization


**Agreed and Accepted**:

_____

By: _____

Its: _____

Date: _____