UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUNAMERICA HOUSING FUND 1050,

    Plaintiff,

v.

PATHWAY OF PONTIAC, INC. ET AL,

    Defendant.

                                /

Case No. 19-11783

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [27] AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [28]**

**INTRODUCTION**

    This case involves a dispute among partners and an affiliate of a partner in the Pontiac ILF Limited Dividend Housing Association Limited Partnership ("the Partnership"), a limited partnership created to develop, operate, and sell a low- to moderate-income apartment complex ("the Property") in accordance with the Low-Income Housing Tax Credit Program. (ECF No. 27-3, PageID.578, 592-93). Plaintiff, SunAmerica Housing Fund 1050 ("SunAmerica"), owns 99.99% of the interests in the Partnership and is the sole Limited Partner. (Am. Ans. ¶ 20). Defendants, Pathway of Pontiac, Inc. ("Pathway") and PV North LLC ("PV North"), are the General Partners and collectively own 0.01% of the interests in the

1

Partnership. (*Id.* ¶ 21). Defendant, Presbyterian Village North ("Presbyterian"), is a Michigan non-profit corporation affiliated with PV North to which the partners granted a right of first refusal ("ROFR") and an Option through their Amended and Restated Agreement of Limited Partnership ("Partnership Agreement"). (*Id.* ¶ 22; ECF No. 27-3, PageID.665-66).

In mid-2019, Plaintiff received notice from the General Partners that a third party, Lockwood Development Company, LLC ("Lockwood"), had submitted an offer to purchase the Property and that Presbyterian would have thirty days to exercise its ROFR. (ECF No. 27-8, PageID.810). Plaintiff, wishing to retain its interest in the Partnership and believing conditions precedent to Presbyterian's ROFR had not been met, initiated the instant action for declaratory relief, breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty. (Compl. ¶¶ 6, 49-76). Defendants brought counterclaims for breach of fiduciary duty and breach of the partnership agreement. (Countercompl. ¶¶ 29-44). The Court dismissed Defendants' counterclaim for breach of fiduciary duty on May 9, 2020. (ECF No. 25).

Pending before the Court are Plaintiff's Motion for Summary Judgment [27] and Defendants' Motion for Summary Judgment [28]. For the reasons articulated below, Plaintiff's Motion for Summary Judgment [27] be **GRANTED** and Defendants' Motion for Summary Judgment [28] be **DENIED**.

2

## BACKGROUND

### I. The Low-Income Housing Tax Credit Program

"The Low-Income Housing Tax Credit ("LIHTC") Program, 26 U.S.C. § 42, is a federal tax credit program designed to promote the development of affordable rental housing for low-income households." *Senior Hous. Assistance Grp. v. AMTAX Holdings 260, LLC*, No. C17-1115RSM, 2019 U.S. Dist. LEXIS 26165, at *3 (W.D. Wash. Feb. 19, 2019). *See generally Low-Income Housing Tax Credits*, NAT'L HOUS. L. PROJECT, https://www.nhlp.org/resource-center/low-income-housing-tax-credits/ [https://perma.cc/CJ3Q-BRCC] (last visited Jan. 21, 2021). Pursuant to the Program, tax credits are awarded to project owners who agree to rent a minimum number of units to low- and moderate-income individuals at below-market rates for a period of at least thirty years. *See* 26 U.S.C. § 42(g)(1), (h)(6)(D), (i)(1). Credits are claimed annually over a ten-year period ("the Credit Period"), however, project owners must comply with the Program for a period of fifteen years ("the Compliance Period") or they run the risk of their credits being recaptured by the IRS. *See id.* § 42(a), (c)(2), (f)(1), (i)(1), (j).

Following the expiration of the Compliance Period, project owners allocated tax credits after 1989 must continue to comply with the Program for an additional fifteen years ("the Extended Use Period"). *See id.* § 42(h)(6)(D).

> [A]fter all the tax credits have been claimed, "most investor limited partners will seek to leave the project, usually—but not always—by

3

> selling their interest to the nonprofit general partner." [*Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P.*, 479 Mass. 741, 744 (2018)]. The statute permits such sales to nonprofits, whether acting as the general partner or in some other capacity, by expressly allowing nonprofit organizations a statutory "right of 1st refusal" to buy the projects at a statutorily prescribed minimum price. 26 U.S.C. § 42(i)(7)(A). . . . The purpose of this below-market purchase right is to encourage LIHTC properties to end up in the hands of nonprofits that would keep the units affordable. [*Homeowner's*, 479 Mass.] at 754-55.

*AMTAX*, 2019 U.S. Dist. LEXIS 26165, at *3-4. Importantly, such ROFRs do not disturb the allocation of tax benefits thanks to a statutory "safe harbor" provision. *See* 26 U.S.C. § 42(i)(7)(A). As one court in the Eastern District of New York explained:

> Section 42(i)(7) recognizes the possibility . . . that were a [non-profit] entity to hold a ROFR to purchase an affordable housing property at a below-market value, the IRS might deem the non-profit entity the "true owner" of the affordable housing property pursuant to the so-called "economic substance doctrine." *See Homeowner's*, 479 Mass. at 754 (citing *Frank Lyon Co. v. United States*, 435 U.S. 561, 572-73, 98 S. Ct. 1291, 55 L. Ed. 2d 550 (1978)). If the IRS were to conclude that the non-profit ROFR-holder were the "true owner" of an affordable housing property, it could limit, disallow, or redirect the flow of LIHTC Program tax credits. *See* 26 C.F.R. § 1.42-4(b). And if the flow of LIHTC Program tax credits were to dry up, this would remove the incentive to for-profit entities investing in affordable housing. Section 42(i)(7) protects against this result.

*Riseboro Cmty. P'ship, Inc. v. SunAmerica Hous. Fund 682*, No. 18-cv-7261 (RJD) (VMS), 2020 U.S. Dist. LEXIS 156891, at *5-6 (E.D.N.Y. Aug. 28, 2020).

### II. The Pontiac ILF Limited Dividend Housing Association Limited Partnership

The Pontiac ILF Limited Dividend Housing Association Limited Partnership

4

was formed in 2001 pursuant to the Michigan Revised Uniform Limited Partnership Act, MICH. COMP. LAWS §§ 449.1101-2108, though its current composition of partners dates to a September 1, 2002 amendment. (ECF No. 27-3, PageID.578). The Partnership Agreement is expressly governed by Michigan law. (*Id.* at 689).

According to the Agreement's recitals section, the Partnership was "formed to acquire, rehabilitate, own, maintain and operate a 150-unit apartment complex intended for rental to elderly persons of low and moderate income, known as Presbyterian Village North,[1] and located in Pontiac, Michigan." (*Id.* at 578). Section 3.01, however, entitled "Purpose of the Partnership," goes on to clarify that the Partnership was "organized *exclusively* to acquire, finance, rehabilitate, own, maintain, operate and sell or otherwise dispose of the [Property], in order to obtain long-term appreciation, cash income, [tax credits under the LIHTC Program,] and tax losses. (*Id.* at 592) (emphasis added). And section 8.01, entitled "Management of the Partnership," requires the General Partners to "use best efforts to carry out [that] purpose." (*Id.* at 624). It also requires them to "take all actions necessary or appropriate to protect the interests of the Limited Partner[] and of the Partnership." (*Id.*).

Although the General Partners "have full, complete and exclusive discretion to manage and control the business of the partnership," there are certain limitations

---

[1] Today, the Property is known as the Village of Oakland Woods. (ECF No. 27-10, PageID.816).

on their authority. (*Id.*). Of particular relevance to this dispute is the limitation in section 8.02(b) that, "*except as provided in Article 17,*" the General Partners may not "sell or otherwise dispose of . . . any material portion of the assets of the Partnership" without first obtaining the consent of the Limited Partner, which "may be withheld in its sole and absolute discretion." (*Id.* at 625) (emphasis added).

Article 17 grants to Presbyterian, under separate terms, a ROFR and an Option to purchase the Property. It provides, in pertinent part:

> 17.01. <u>Grant of Right of First Refusal</u>. Partnership hereby grants to Presbyterian a right of first refusal to purchase the Apartment Complex on the terms and conditions set forth in Sections 17.02, 17.03, 17.04 and 17.05 hereof. . . .
>
> 17.03. <u>Manner of Exercising Right of First Refusal</u>. Upon receipt of a bona fide offer, Partnership shall notify Presbyterian in writing of the offer, and Presbyterian shall thereupon exercise its right of first refusal within thirty (30) days, or Partnership may sell the Apartment Complex on the terms as it may determine. . . .
>
> 17.06. <u>Grant of Option</u>. The Partnership grants to Presbyterian an option to purchase the Apartment Complex . . . .
>
> 17.08. <u>Manner of Exercising Option</u>. Presbyterian may exercise its option by delivering to the Partnership, with a copy to the Investment Partnership, during the option term, written notice of the exercise. The notice of exercise shall state that the option is exercised without condition or qualification.

(*Id.* at 665-66). While the ROFR allows Presbyterian to purchase the Property for a

6

statutory minimum purchase price,[2] Presbyterian can only exercise the ROFR if certain conditions are met. (*Id.* at 665). The precise contours of these conditions are the subject of the instant litigation. The Option, by contrast, allows Presbyterian to purchase the Property without any conditions being met so long as it pays, at a minimum, the Property's fair market value. (*Id.* at 666). The Partnership Agreement makes both the ROFR and the Option available for one year following the end of the Compliance Period. (*Id.* at 665-66).

### III. The Attempted Exercise of the ROFR and Sale of the Property

Presbyterian first advised the Partnership that it desired to acquire the Property in late 2017. (Am. Ans. ¶ 39). Because the Compliance Period did not end until December 31, 2018, however, Plaintiff communicated to Presbyterian that it preferred to wait until 2019 to deal with the issue. (*Id.*). Consequently, in early 2019, Plaintiff and Defendants engaged through counsel in discussions as to the necessity, among other things, of "the Partnership be[ing] a willing seller in order to trigger the [ROFR]." (ECF No. 27-4, PageID.788; ECF No. 27-5, PageID.798). On March 6, 2019, Defendants' counsel advised Plaintiff's counsel that Defendants disagreed with Plaintiff's legal conclusions regarding ROFRs and that the General Partners "intend[ed] to proceed in accordance with Article 17." (ECF No. 27-5, PageID.799).

---

[2] Pursuant to 26 U.S.C. § 42(i)(7)(B), the "minimum purchase price" is essentially the sum of any remaining debt plus any taxes attributable to the sale.

Accordingly, on May 2, 2019, PV North sent an email to Lockwood soliciting an offer to purchase the Property. (ECF No. 27-6, PageID.801). Attached to this email was a copy of an offer letter that a different organization had sent PV North on March 27, 2019. (*Id.* at 802). The email stated that once Lockwood submitted its offer, the General Partners intended to "put the ROFR to [Plaintiff]." (*Id.*). On May 7, 2019, PV North sent a follow-up email to Lockwood that included a forwarded April 2, 2019 memo from Defendants' counsel regarding the utility of the prior offer with respect to triggering the ROFR. (ECF No. 27-7, PageID.807). In that memo, Defendants' counsel explained that that he did not believe the first offer satisfied the Partnership Agreement's "bona fide offer" requirement because it was not sufficiently binding. (*Id.*). Defendants instructed Lockwood to consider this advice as it went about drafting its own offer and stated that "[they] really appreciate[d] the effort." (*Id.*).

On May 21, 2019, Lockwood submitted its proposal to purchase the Property ("the Lockwood Proposal"). (ECF No. 27-10, PageID.816). The Proposal provided for a sixty day "Investigation Period" following the Partnership's acceptance during which Lockwood could terminate the agreement "for any reason or no reason." (*Id.* at 817). On May 31, 2019, Defendants' counsel provided notice to Plaintiff, Pathway, and Presbyterian that the Partnership had received a bona fide offer and that, accordingly, Presbyterian would have thirty days to exercise its ROFR under

8

Article 17. (ECF No. 27-8, PageID.810; ECF No. 27-9, PageID.813). Presbyterian wrote to the General Partners on June 3, 2019 to advise that it was electing to exercise its ROFR. (ECF No. 27-11, PageID.827). Plaintiff responded by filing the instant lawsuit on June 14, 2019. (Compl.).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views all of the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255.

## ANALYSIS

The instant dispute can be distilled down to two primary issues. First, whether

the Lockwood Proposal constituted a "bona fide offer" despite the fact that it was solicited by the General Partners for the purpose of triggering Presbyterian's ROFR and was terminable "for any reason or no reason" within sixty days of acceptance. (ECF No. 27-6, PageID.801; ECF No. 27-7, PageID.807; ECF No. 27-10, PageID.817). Second, whether the ROFR provision in the Partnership Agreement required the either the General Partners or the Partnership to form an intent to sell the Property as a condition precedent, despite no such requirement being specifically enumerated. (ECF No. 27-3, PageID.665).

The Partnership Agreement defines neither "bona fide offer" nor "right of first refusal," however, the Agreement provides that it is to be read according to Michigan law. (ECF No. 27-3, PageID.689).

> In interpreting a contract, [Michigan courts] determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law. However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties.

*In re Smith Tr.*, 480 Mich. 19, 24 (2008).

## I. Lockwood Did Not Make a Bona Fide Offer

Michigan courts have not defined the term "bona fide offer" in the context of a ROFR. They have, however, defined the two terms individually in other contexts. "Bona fide" has been defined as "made or done in good faith, without deception or

fraud, authentic, genuine, real." *Cowles v. Bank W.*, 476 Mich. 1, 34 (2006) (citing RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY (2d ed. 1997)). It has also been defined as "honestly, openly, and sincerely," or "truly[,] actually[, and] *without simulation and pretense.*" *Univ. of Mich. Bd. of Regents v. Dep't of Treasury*, 217 Mich. App. 665, 671 (1996) (emphasis added) (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)). Michigan courts define an "offer," meanwhile, "as 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited *and will conclude it.*'" *Eerdmans v. Maki*, 226 Mich. App. 360, 364 (1997) (emphasis added) (quoting Restatement (Second) of Contracts § 24 (Am. L. Ins. 1981)). From these definitions, it is clear that the requirement of a "bona fide offer" is more demanding than that of an "offer" and that, at the very least, a bona fide offer must be binding. *Cf. In re Rogers*, 243 Mich. 517, 524 (1928) (defining "a bona fide attempt" as one involving "an offer made honestly and in good faith" that is not "merely formal or colorable" and involves "a reasonable effort to induce the owner to accept it"). Here, Plaintiff's uncontradicted evidence leaves no genuine dispute that the Lockwood Proposal was a non-binding pretense to trigger the ROFR.

The record is replete with evidence that the Lockwood Proposal was not made in good faith and was merely put forward to create the appearance of an offer so that Presbyterian could exercise its ROFR. Particularly persuasive is the email from PV

North to Lockwood including the memo from Defendants' counsel explaining what it would take to trigger Presbyterian's ROFR and *telling Lockwood that they "really appreciate[d] the effort."* (ECF No. 27-7, PageID.807). Defendants provide no evidence to contradict this interpretation and instead insist that the offer was made in earnest simply because of its price.

Even more problematically, the Lockwood Proposal was expressly terminable "for any reason or no reason" within sixty days. (ECF No. 27-10, PageID.817). In other words, it was not binding and therefore cannot have constituted an "offer," bona fide or otherwise. Lockwood's "unilateral right to cancel [the] entire agreement . . . negate[d] the existence of any consideration [such] that the promise [was] essentially empty or illusory." *Tobel v. Axa Equitable Life Ins. Co.*, No. 298129, 2012 Mich. App. LEXIS 326, at *13 (Feb. 21, 2012) (quoting *Wilson v. Gifford-Hill & Co., Inc.*, 570 P.2d 624, 626 (Okla. Ct. App. 1977)). *See generally* Restatement (Second) of Contracts § 77 cmt. a (Am. Law Inst. 1981) ("Illusory promises. Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise.").

Accordingly, the Court finds that the Lockwood Proposal was not a bona fide offer and was insufficient to trigger Presbyterian's ROFR. *See Senior Hous. Assistance Grp. v. AMTAX Holdings 260, LLC*, No. C17-1115 RSM, 2019 U.S. Dist. LEXIS 54307, at *28 (W.D. Wash. Mar. 29, 2019) (finding, under very similar

circumstances involving the LIHTC Program, that multiple offers solicited for the purpose of triggering related ROFRs were not bona fide).

## II. The ROFR Required the General Partners' Intent to Sell

Plaintiff argues that the Partnership Agreement conditioned exercise of Presbyterian's ROFR on the Partnership's intent to sell and that this would have required Plaintiff's consent. (ECF No. 27-1, PageID.561). Defendants argue that the ROFR provision in the contract did not require an intent to sell because it was a "'hybrid' transfer right, not a [ROFR] in the classic sense." (ECF No. 28, PageID.851). Neither party is correct, but Plaintiff comes closer. As explained in more detail below, the ROFR was a "classic" ROFR and did require that the Partnership form an intent to sell, however, only the General Partners were required to form that intent.

While Defendants are correct that the common law definition of "ROFR" could theoretically have been overborne by language making clear the parties intended to provide for something other than a traditional ROFR, that did not happen here. *See In re Smith Tr.*, 480 Mich. at 24. That being said, the specific enumeration of the bona fide offer requirement does create some ambiguity in the Agreement. It is therefore appropriate for the Court to consider extrinsic evidence in determining the meaning of the ROFR provision. *See id.*

The most illuminating extrinsic evidence is the safe harbor provision in

13

LIHTC Program, 26 U.S.C. § 42(i)(7)(A), which specifically covers only common law ROFR's. *See Riseboro*, 2020 U.S. Dist. LEXIS 156891, at *12-13.

> The House Report on the law codifying § 42(i)(7) makes clear that . . . [Congress] grasped the difference between "option" and "right of 1st refusal," stating:
>
>> [t]he bill provides that any determination as to whether Federal income tax benefits are allowable to a taxpayer with respect to a qualified low-income building shall be made without regard to whether the tenants are given the right of first refusal . . . to purchase the building, for a minimum purchase price, *should the owner decide to sell (at the end of the compliance period)*.

*Id.* at *12 (emphasis in original) (quoting H.R. Rep. No. 101-247, 101st Cong., 1st Sess., at 1195 (1989)). Against this clear statutory backdrop and the widely-acknowledged requirement that ROFRs require an owner's intent to sell, *see Randolph v. Reisig*, 272 Mich. App. 331, 336 (2006), the fact that the Partnership Agreement enumerated only the bona fide offer requirement does not show that the parties intended to grant Presbyterian a less stringent hybrid transfer right. *See id.* at *18 (explaining that because ROFR is a "well-established term of art," "the absence . . . of any enumerated conditions" do not "indicat[e] that the partners intended to do anything other than grant . . . a common law ROFR"). Indeed, had the Partnership Agreement not adopted the common law definition of RFOR, Plaintiff might not have qualified for the safe harbor and its tax credits might have been subject to recapture. *See id.* at *6.

14

Next, although Plaintiff is correct that the ROFR required the Partnership to form an intent to sell, it is incorrect that its consent was necessary for that to intent to manifest. Plaintiff's mistake stems from section 8.02(b) of the Partnership Agreement. That section states that the General Partners may not "sell or otherwise dispose of . . . any material portion of the assets of the Partnership" without first obtaining the consent of the Limited Partner, which "may be withheld in its sole and absolute discretion." (ECF No. 27-3, PageID.625). The problem with Plaintiff's argument, however, is that section 8.02(b) also specifically excludes Article 17, which includes the ROFR provision, from this requirement. (*Id.*). Accordingly, Plaintiff was not required to form an intent to sell the Property for Presbyterian to exercise its ROFR.

The only remaining question is whether the General Partners intended to sell. The evidence is overwhelming that they did not. Defendants' counsel made clear well before the General Partners received the Lockwood Proposal that they "intend[ed] to proceed in accordance with Article 17." (ECF No. 27-5, PageID.799). The nature of Defendants' later emails to Lockwood and the advice provided by Defendants' counsel only reinforces this conclusion. (ECF No. 27-6, PageID.801; ECF No. 27-7, PageID.807).

In summary, for the RFOR in the Partnership Agreement to have been triggered, 1) the Partnership would have had to receive a bona fide offer, and 2) the

15

General Partners would have had to truly manifest an intent to sell. *See In re Smith Tr.*, 480 Mich. at 28 (Corrigan, J., concurring); 17 C.J.S. *Contracts* § 24. Because neither of those conditions were satisfied, Presbyterian was not entitled to exercise its ROFR and Defendants breached the Partnership Agreement. Plaintiff, by refusing to acquiesce to Defendants' breach, did not breach the Partnership Agreement.

### III. General Partner Defendants Breached Their Fiduciary Duty Towards Plaintiff

Pursuant to MICH. COMP. LAWS §§ 449.1403(b) and 449.21(a), the "general partner[s] in a limited partnership owe[] a fiduciary duty to the limited partner[]." *Kings Lane GP Inc. v. Kings Lane Ltd. Dividend Hous. Ass'n*, No. 338967, 2018 Mich. App. LEXIS 3621, at *25-26 (Dec. 4, 2018) (citing *Preston v Granada Mgmt. Corp*, 188 Mich. App. 667, 673 (1991)). Here, in addition to owing Plaintiff this statutory fiduciary duty, Defendant General Partners also promised in the Partnership Agreement to "take all actions necessary or appropriate to protect the interests of the Limited Partner[] and of the Partnership." (ECF No. 27-3, PageID.624). Defendants acted in violation of these duties by attempting to effectuate a transfer of the Property to Presbyterian, an affiliate of PV North, for a below market value against the interests of Plaintiff and the Partnership. Moreover, Plaintiff correctly notes that, if successful, this endeavor would have deprived it of the long-term appreciation and end cash-flow distributions the Partnership Agreement explicitly states are part of the purpose of the Partnership. (*Id.* at 592).

16

Accordingly, Defendant General Partners breached their fiduciary duty to Plaintiff.

### IV. Plaintiff Cannot Separately Recover for Defendants' Breach of the Covenant of Good Faith and Fair Dealing

Though the above analysis demonstrates that Defendants breached the covenant of good faith and fair dealing, Plaintiff's third cause of action is invalid to the extent that it seeks to recover separately for this breach. *See PTN-NRS, LLC v. Cty. of Wayne*, No. 332135, 2017 Mich. App. LEXIS 1523, at *9 (Ct. App. Oct. 5, 2017) ("Michigan does not recognize a separate cause of action for breach of an implied covenant of good faith and fair dealing apart from a claim for breach of the contract itself." (citing *Belle Isle Grill Group v. City of Detroit*, 256 Mich. App. 463 (2003)).

### CONCLUSION

Because Defendants solicited a non-binding pretextual offer from a third party and never intended to sell the Property, the RFOR was not triggered and Defendants breached the Partnership Agreement. Moreover, because Defendants' attempts to trigger the RFOR were in bad faith and against the interests of Plaintiff, Defendants breached their fiduciary duty to Plaintiff as well as the covenant of good faith and fair dealing. Plaintiff did not breach the Partnership Agreement because it merely refused to acquiesce to Defendants' breach.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [27] is **GRANTED**.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [28] is **DENIED**.

**SO ORDERED**.

Dated: February 4, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge