<pre>
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3   SUNAMERICA HOUSING FUND 1050,
     a Nevada limited partnership,
 4
                    Plaintiff,
 5                                        HON. ARTHUR J. TARNOW
       v.                                 No. 19-11783
 6
     PATHWAY OF PONTIAC, INC., a
 7   Michigan corporation; PV NORTH
     LLC, a Michigan limited liability
 8   company; and PRESBYTERIAN VILLAGE
     NORTH, a Michigan corporation,
 9
                    Defendants.
10   _____/

11
                   CROSS MOTIONS FOR SUMMARY JUDGMENT
12                    (Held Via Videoconference)

13              BEFORE DISTRICT JUDGE ARTHUR J. TARNOW
                 Theodore Levin United States Courthouse
14                   231 West Lafayette Boulevard
                         Detroit, Michigan
15                   Tuesday, February 2, 2021
                           1:23 p.m.
16

17   APPEARANCES:

18     For the Plaintiff:        LOUIS E. DOLAN, JR.
                                 KEITH E. EDEUS, JR.
19                               Nixon Peabody, LLP
                                 779 9th Street NW, Suite 500
20                               Washington, D.C.  20001
                                 (202) 585-8818
21


22
       (Appearances continued on the next page)
23


24            To Obtain Certified Transcript, Contact:
           Leann S. Lizza, CSR-3746, RPR, CRR, RMR, CRC, RDR
25                         (313) 234-2608
</pre>

```
1    APPEARANCES (Continued):

2       For the Defendants:          KEVIN J. RORAGEN
                                      Loomis, Ewert, Parsley,
3                                       Davis & Gotting, P.C.
                                      124 West Allegan
4                                     Suite 700
                                      Lansing, Michigan  48933
5                                     (517) 318-9252

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**TABLE OF CONTENTS**

Motion Hearing                                                    Page

  Argument by Mr. Dolan                                           5

  Argument by Mr. Roragen                                        12

  Further argument by Mr. Dolan                                  21

  Further argument by Mr. Roragen                                27

  Further argument by Mr. Dolan                                  30

  Further argument by Mr. Roragen                                34

  Further argument by Mr. Dolan                                  36

  Motions taken under advisement by the Court                    37


Exhibits:                                                    Received

  (None offered.)

4

```
 1                               February 2, 2021
 2                               Detroit, Michigan
 3                      -    -    -
 4          THE COURT CLERK:  United States District Court for the
 5   Eastern District of Michigan is now in session; the Honorable
 6   Arthur J. Tarnow presiding.  Now calling the case of SunAmerica
 7   Housing Fund 1050 versus Pathway of Pontiac Inc., et al., Case
 8   Number 19-11783.
 9          Will counsel please make their appearances for the
10   record.
11          MR. DOLAN:  Yes, thank you.  Good afternoon, Your
12   Honor.  My name is Louis Dolan.  I'm with the law firm of Nixon
13   Peabody appearing today from Washington, D.C. and I am here
14   with my colleague, Keith Edeus, also from Nixon Peabody, who is
15   appearing from our Chicago office.
16          THE COURT:  Who are you representing?
17          MR. DOLAN:  I represent SunAmerica 1050, a Nevada
18   limited partnership, the plaintiff in this case, Your Honor.
19          THE COURT:  Okay.  Thank you.  Welcome.
20          MR. DOLAN:  Thank you, Your Honor.
21          THE COURT:  Are you here by yourself or is somebody
22   opposing you?
23          MR. RORAGEN:  Oh, sorry, Your Honor.  And good
24   afternoon.  My name is Kevin Roragen with the Loomis law firm
25   in Lansing, Michigan and I am here representing the defendants
```

```
 1  in this case.
 2          THE COURT:  And that's it?
 3          MT. RORAGEN:  That's --
 4          THE COURT:  Okay.  I was confused because I had an
 5  extra box on the screen but it's -- the court reporter is both
 6  on video but also on the telephone so she's here two places on
 7  the screen.  And she's very welcome as to have the two spots
 8  and I thank her for being here.
 9          Now, there are cross motions.  Am I right?
10          MR. DOLAN:  Yes, Your Honor.
11          THE COURT:  Who is going to go first?
12          MR. DOLAN:  We respectfully request the opportunity to
13  be heard first as plaintiffs, Your Honor.  This is Louis Dolan
14  speaking.
15          THE COURT:  You may.
16          MR. DOLAN:  Thank you, Your Honor.
17          We appreciate the opportunity to be heard on these
18  cross motions for summary judgment.
19          Your Honor, as I indicated at the outset, I represent
20  SunAmerica 1050 which is the limited partner owning a 99
21  percent interest, greater than 99 percent interest in the
22  limited partnership that owns the property that is at issue.
23          The general partners of that partnership are entities
24  that all, unfortunately, start with the letter P so they can be
25  a little bit confusing, but the general partners, I'll
```

1   generally refer to them as general partners, but they are

2   Pathway and PV North.  They own less than 1 percent, in fact, a

3   .01 percent interest in the limited partnership --

4              THE COURT:  What's their interest in selling this?

5   I'm asking you but I will also ask defense counsel.  What do

6   you perceive their interest in selling it is?

7              MR. DOLAN:  I'm sorry.  What do I perceive what?

8              THE COURT:  Why do they want to sell it?  And if you

9   don't know, that's fine too.  That is an appropriate answer.

10             MR. DOLAN:  Your Honor, that's a very fair question.

11  They don't want -- the general partners don't want to sell the

12  property.  They want to transfer it at a below-market price

13  under a right of first refusal that was not properly exercised

14  in our view to an affiliate of theirs.

15             THE COURT:  Okay.

16             MR. DOLAN:  So they're not looking to sell the

17  property.  In fact, that is one of the cruxes of this case

18  which is that the efforts that they have been engaged in were

19  not designed to reflect a bona fide transaction of any type but

20  instead were designed to trigger under effectively false

21  pretenses --

22             THE COURT:  Okay.  Stop.

23             MR. DOLAN:  -- right of first refusal.

24             THE COURT:  The alleged purchaser is something called

25  Lockhart?

ARGUMENT BY MR. DOLAN

1    MR. DOLAN:  Lockwood, Your Honor, yes.

2    THE COURT:  Lockwood.  What's their relationship to

3  the general and special partner, limited partner, whatever?

4    MR. DOLAN:  They have no corporate relationship, if

5  that is what Your Honor means.  They are an independent third

6  party that the general partners approached specifically for the

7  purpose of contriving what they call an offer.

8    THE COURT:  Okay.  And I'm asking this of defense

9  counsel.  Is that undisputed that they were approached by the

10  general partners?

11    MR. RORAGEN:  Your Honor, it's -- it is not disputed

12  that there was communication between the general -- between the

13  general partner and Lockwood in which it was -- and that the

14  general partners solicited Lockwood to make an offer to

15  purchase the property.  I think it is disputed that that was

16  all done in furtherance of some scheme or contrivance, as

17  Mr. Dolan has characterized it.  But --

18    THE COURT:  No, no.  You missed the opportunity to be

19  the first lawyer to answer a yes-or-no question with a yes or a

20  no without an explanation.  I'll take that as a yes.  And then

21  my question is:  Is that the reason that Lockwood was not

22  deposed?  Or [indiscernible] --

23    MR. RORAGEN:  I don't know --

24    THE COURT:  Why didn't you want to depose them?

25    MR. RORAGEN:  Are you talking to defense counsel, Your

### ARGUMENT BY MR. DOLAN

1    Honor, or to plaintiff's counsel?

2         THE COURT:  To both of you.  You can start.

3         MR. RORAGEN:  Okay.  I'm speaking on behalf of the

4    defendants.  I do not know the reason that Mr. Lockwood wasn't

5    deposed.  I would have expected him to have been deposed by

6    plaintiff's counsel.  There was nothing that -- from the

7    defense perspective, we did not see a need to depose

8    Mr. Lockwood.  And so I don't know --

9         THE COURT:  Okay.

10        MR. RORAGEN:  I'll let plaintiff's counsel --

11        THE COURT:  You've answered.  Let plaintiff counsel.

12        MR. DOLAN:  Yes, Your Honor.  Louis Dolan on behalf of

13   plaintiffs.

14        The Lockwood letter, the expression of interest, the

15   letter of intent speaks for itself.  It does not constitute or

16   comprise a bona fide offer within the requirements of either

17   the partnership agreement or state law --

18        THE COURT:  Okay.  No, no.  Please listen to the

19   question because I think both of you agree that it was not a

20   disputed fact that Lockwood made the offer and there was no

21   reason to depose him from either side.  Is that a fair summary?

22        MR. DOLAN:  Your Honor, on behalf of the plaintiffs,

23   it is fair except with respect to Your Honor's

24   characterization, and I say this respectfully of the term

25   "offer."  It was not an offer that was capable of acceptance --

ARGUMENT BY MR. DOLAN

1          THE COURT:  No, I understand the legal argument, and I
2  sit corrected as to perhaps my lack of conciseness.  But the
3  point is whatever you needed from Lockwood was already a matter
4  of record and you did not feel it necessary to depose him,
5  correct?
6          MR. DOLAN:  That is correct.
7          THE COURT:  Okay.  I'd like to start out with where
8  you guys agree and then go from there.
9          Continue with your argument, please.
10          MR. DOLAN:  Okay.
11          THE COURT:  Now that I've interrupted four times.
12          MR. DOLAN:  Quite all right.  Thank you, Your Honor.
13          As I indicated, this is a dispute over what we believe
14  to be the improper exercise of a right of first refusal.
15  Sometimes we refer to that as a ROFR.  The partnership
16  agreement between the parties at Section 1703 grants a right of
17  first refusal to a third party, in this case, Presbyterian
18  Village, the ROFR holder.  The grant of the right of first
19  refusal is authorized but not required under Section 42(i)(7)
20  of the Internal Revenue Code.  The grant of the ROFR, right of
21  first refusal, under the partnership agreement requires by the
22  plain language of the partnership agreement, and we would
23  respectfully suggest that is not plain language that can be
24  ignored, but the plain language of the partnership agreement
25  requires that the right of first refusal can only be satisfied

1    if there is a bona fide offer from a third party.  Because the

2    right of first refusal is also a well-established term of art

3    within Michigan law and within the law of every other state in

4    the country, it carries with it those common law

5    characteristics that have been decided upon in this case under

6    the state law of the State of Michigan.

7          So that leads us to two conditions with respect to the

8    right of first refusal in this instance that the defendants, in

9    their attempt to exercise it, have not satisfied.  To put a

10   finer point on that, there are two specific requirements to

11   properly exercise the right of first refusal.  The first is

12   that a bona fide offer from a third party be received.  That

13   requirement has essentially two subparts.  One is that the

14   offer itself be bona fide.  That, Your Honor, means that by the

15   definition that we have all come to know in terms of what

16   bona fide means is that the offer not be filled with pretense

17   or a sham or that it be a stalking horse but that it be a

18   genuine offer solicited, right, and received by the partnership

19   and not something that is filled with pretense and designed to

20   deceive the limited partners or to trigger some third-party

21   right under the partnership agreement.  And we would

22   respectfully suggest to the Court that what has happened here

23   does not meet any of the requirements of being a bona fide

24   offer.  This was an offer solicited by the general partner from

25   a third party where there was absolutely no intent of the

11

```
 1    general partner to accept it.  There was no intent on the part
 2    of the third-party offeror to complete the transaction and we
 3    know that by virtue of the letter of intent, the so-called
 4    offer that was received from the third-party offeror, Lockwood.
 5          And, instead, what this effort was designed to do was
 6    not to be genuine at all but, instead, it was designed
 7    specifically for the purpose of triggering the right of first
 8    refusal under the partnership agreement.  So in that sense in
 9    and of itself, Your Honor, this was not at all a bona fide
10    effort on the part of the general partner to solicit an offer
11    for full and fair consideration by its 99 percent limited
12    partners.  In fact, this offer, right, was not even presented
13    until discovery in this case, until this federal court got
14    involved.  This offer was not even presented to my clients as a
15    bona fide expression of something that the general partner
16    wanted to accomplish for the benefit of its partner and the
17    partnership.  Instead, it was a sham designed solely to trigger
18    the below-market right of first refusal that the general
19    partner's affiliate, Presbyterian Village North, the right of
20    the first refusal holder, had under the partnership documents.
21    So it was not at all bona fide in that sense.
22          The other component to being a bona fide offer is the
23    word "offer," right?  So there are two components to this
24    piece.  One is bona fide, which I've addressed; the other is
25    offer.  This instrument, this document that this third party
```

ARGUMENT BY MR. DOLAN

1    sent to the general partners, did not even meet the basic

2    requirements of being an offer, being something that if

3    accepted, would form a binding contract between the partnership

4    and the third-party offeror.  So it fails with respect to the

5    plain language of the partnership agreement on both of those

6    grounds.

7         You know, there's a very important additional

8    consideration, or I would say that is consideration one, 1A and

9    1B, the bona fide nature and the fact that it did not comprise

10   an offer.

11        Point number two, Your Honor --

12        THE COURT:  Wait, wait, wait.  Why does it not

13   comprise an offer?

14        MR. DOLAN:  Because it would not provide the certainty

15   of a contract if it were accepted.

16        THE COURT:  Which elements of the contract were

17   missing?

18        MR. DOLAN:  The binding nature of an agreement so that

19   this third party could excuse itself for any reason or no

20   reason at all.

21        THE COURT:  Okay.  Now, I'm going to stop you because

22   I'd like to hear the defense response and you'll get a chance

23   to develop the rest of your arguments as we go along.

24        MR. DOLAN:  Thank you, Judge.

25        MR. RORAGEN:  Thank you, Your Honor.  I just want to

1    make sure I understand the Court's request.  Do you want --

2           THE COURT:  I want you to respond to the argument that

3    he just made, that this was a sham and it was not bona fide and

4    it was not an offer.

5           MR. RORAGEN:  Very well.  Thank you, Your Honor.  I

6    appreciate the clarification.

7           So, Your Honor, from the defendants' perspective, the

8    Lockwood offer clearly constitutes a bona fide offer.  And that

9    an offer as defined under Michigan law with the authority cited

10   in our briefs is a manifestation of a willingness to enter into

11   a bargain such that the recipient understands that acceptance

12   is invited and will conclude the bargain.

13          THE COURT:  Okay.  Let me do a bit of a disclosure.

14   You may or may not have researched my background, and the

15   emphasis in any of the services that provide that to lawyers is

16   the fact that I was a criminal defense appellate lawyer.  What

17   sometimes is overlooked, that I used to teach contracts at the

18   university law school level.  And what the plaintiffs are

19   saying is that this is not a valid offer or a binding offer

20   because of the escape clause which says if you accept this

21   offer, I have the right to terminate any agreement for no --

22   for any reason or for no reason.  So please respond to that as

23   being what I'll call a binding offer.

24          MR. RORAGEN:  Thank you, Your Honor.

25          Well, first of all, the -- I would say that this is an

```
 1   offer to purchase real estate and the provision that the
 2   plaintiffs are pointing to is a section of the purchase
 3   agreement, the purchase offer that is entitled Investigation
 4   Period, and the language that plaintiff's counsel is referring
 5   to talks about an investigation period which commences on
 6   acceptance of the offer and lasts for a period of 60 days.
 7   During that investigation period the purchaser has the right to
 8   make whatever inquiries they think are needed with regard to
 9   the property, and it states that during that investigation
10   period the purchaser -- and it has sole discretion to determine
11   whether or not the property is suitable, and it does say that
12   the purchaser could determine for any reason or no reason that
13   it does not wish to acquire the property, the purchaser can
14   terminate the agreement.  That right, first of all, I would
15   say, Your Honor, that's not an unusual right to have in an
16   offer to purchase property at all.  Agreements or offers to
17   purchase property are often made contingent on the purchaser's
18   right of inspection --
19             THE COURT:  Well --
20             MR. RORAGEN:  -- or the purchaser's rights to review
21   the property.
22             THE COURT:  Let me interrupt you, which I just did.
23   The first part of what you're saying is absolutely true.  If
24   there's an investigative clause, as you've described it,
25   investigation period, the whole purpose of that is to make sure
```

1  that there's no lien, there's no encumberment on the property,
2  or if it's a building, there's no hidden defect that becomes
3  apparent during the investigation. However, the second part
4  that says, well, even if we don't find any defect or
5  encumbrance or any concrete [indiscernible], no pun intended,
6  then we still can terminate the agreement. Is that common in
7  the trade or am I missing something?
8          MR. RORAGEN: Your Honor, I understand what you're
9  saying but I don't think that it's -- simply because the
10 purchaser has sole discretion to determine whether there --
11 during that investigative period the property is suitable or
12 not, I don't think that that --
13         THE COURT: No, that's not what it says. It doesn't
14 say he -- or purchaser can terminate it if it's not suitable.
15 It's saying that he can terminate it for no reason at all.
16         MR. RORAGEN: Well, Your Honor, I guess I respectfully
17 would disagree with that characterization because you look at,
18 and it's paragraph 5 of the Lockwood offer, that, as I said, is
19 entitled Investigation Period, it states that during the
20 investigation period the purchaser may make such investigations
21 as purchaser considers appropriate in its sole discretion in
22 order to determine whether the property is suitable for its
23 purposes. That's, period, end of sentence.
24         The next sentence says, If purchaser --
25         THE COURT: Wait a minute. Hold on, you got a period,

```
 1   you got to end a sentence, you got a question.  And my response

 2   is implicit in that, it's not explicit, that there has to be a

 3   reason that the purchaser finds that it's not suitable for

 4   their purposes.  So that doesn't change what we're talking

 5   about, that -- if that's all there was, we wouldn't be

 6   discussing it.  That's perfectly appropriate, that that would

 7   include a reason that it's not appropriate -- not suitable.  So

 8   go to your next sentence which was the one you were focusing

 9   on.

10            MR. RORAGEN:  Yes.  The next sentence, If purchaser

11   determines for any reason or no reason that it does not wish to

12   acquire the property, purchaser will terminate this agreement.

13            THE COURT:  Okay.  Now --

14            MR. RORAGEN:  So, now --

15            THE COURT:  Let me repeat my question.  Is that common

16   in these kinds of purchase offers?

17            MR. RORAGEN:  I don't think that it --

18            THE COURT:  That sentence.

19            MR. RORAGEN:  I don't know if that particular sentence

20   is common or uncommon, Your Honor.  I don't think --

21            THE COURT:  Well, that's a fair answer.  Let me ask

22   plaintiff attorney.

23            Mr. Dolan, do you know the answer to that question?

24   Do you see that language?  And I guess I am missing a question

25   here.  I'm presuming both of you do a lot of real estate work.
```

 1    Is that a fair conclusion on my part?

 2                MR. RORAGEN:  Yes.

 3                MR. DOLAN:  Yes, Your Honor, from --

 4                THE COURT:  Okay.  Mr. Dolan, do you see that kind of

 5    language in purported offers?

 6                MR. DOLAN:  No, Your Honor, it is not common.  It

 7    renders the instrument ephemeral and of no meaning effectively

 8    because they can simply --

 9                THE COURT:  Is that so in case I didn't know what

10    ephemeral meant, of no meaning?

11                MR. DOLAN:  Of no meaning, illusory, not worth the

12    typewritten ink it's been printed on.

13                THE COURT:  Okay.

14                MR. RORAGEN:  And I would disagree with that, Your

15    Honor.

16                THE COURT:  What if it were toner, Mr. Dolan, and not

17    ink?

18                MR. RORAGEN:  I -- if I could --

19                THE COURT:  Why do you disagree?

20                MR. RORAGEN:  I disagree, Your Honor, because that

21    does not render this an illusory agreement.  That is the --

22                THE COURT:  Wait, wait, wait.  You're not disagreeing

23    with his statement that this is not a common proviso.

24                MR. RORAGEN:  Oh, I'm sorry, Your Honor.  I also do a

25    large amount of real estate work.  I don't know if it's common

ARGUMENT BY MR. RORAGEN

 1    or uncommon, but it's not something that I would say I've never
 2    seen.  I've seen this --
 3              THE COURT:  Okay.
 4              MR. RORAGEN:  -- in other agreements.
 5              THE COURT:  This is a bad word, assume.  Did you go to
 6    Catholic school?
 7              MR. RORAGEN:  I did not, Your Honor.
 8              THE COURT:  Nor did I, but I went to a play once, with
 9    a purported nun, and Mr. Edeus, you know where I'm going.  They
10    put on the blackboard the word "assume" and break it into three
11    parts.
12              MR. RORAGEN:  Yes.
13              THE COURT:  Okay?
14              MR. RORAGEN:  I'm familiar, Your Honor.
15              THE COURT:  Yeah.  Don't rely on an assumption.  If
16    you don't know, that's fine.  But especially when you have a
17    person on the screen sitting next to you, the person who
18    probably does the same amount or close to the same amount of
19    real estate work and says it's rare and you're assuming its not
20    rare when you have no factual basis for that.  So, in terms of
21    your argument about the legal conclusion of the impact of this
22    statement --
23              MR. RORAGEN:  Yes.
24              THE COURT:  -- I understand both your sides.  I mean
25    you disagree as to the impact.  At this point I'm leaning

```
 1   towards Mr. Dolan's interpretation because, well, at my age I
 2   get to tell war stories and I did have a criminal case
 3   involving real estate, and my client was bidding on HUD
 4   housing.  And it's hard to devise a system when it sold a
 5   property that when the wannabe purchaser submitted an offer, I
 6   did not treat it as an offer but, rather, would accept -- would
 7   say, okay, you're a high bidder and we're offering to buy it
 8   from you but my client, who I did not do the trial for but I
 9   did the appeal, had this brilliant idea.  He formed legally
10   four companies, registered them, did everything he was supposed
11   to, and he would submit bids for each company.  And if HUD
12   said, okay, you're high but this other company had the second
13   high bid, he would withdraw the first one and accept HUD's
14   offer on the second one and so on.  He was convicted of fraud.
15   And when I got to the Sixth Circuit to argue -- I'm pausing on
16   deciding how much to brag and not to brag because the trial
17   attorney came to me with a 50-page brief not raising
18   sufficiency of the evidence and there was a 50-page limit so I
19   had to edit his brief to make room for a sufficiency-of-the
20   evidence argument which took about two pages because it wasn't
21   fraud, he was making true statements.  And there was no binding
22   offer even though HUD could have made it it, the bidder bid as
23   to be an offer.  In oral argument the presiding judge in a very
24   friendly Kentucky accent said, "Counsel," and this is to the
25   U.S. Attorney, "couldn't a 16-year-old kid figure out how to
```

ARGUMENT BY MR. RORAGEN

1  work the system without committing fraud?"  And I knew I had a

2  winner.

3          And an offer is an offer only if it's a definite offer

4  and that's why I'm leaning towards Mr. Dolan's position.  And

5  if I were to accept Mr. Dolan's position, you have a fall-back

6  argument?

7          MR. RORAGEN:  I'm sorry, Your Honor.  If you were

8  accepting the position that the Lockwood --

9          THE COURT:  There was not a -- forgetting getting into

10  the question of bar of fakings but, rather, just the question

11  of whether there was an offer or not.  If there was no offer,

12  does that mean that a right of first refusal is not triggered

13  and your position is gone?

14          MR. RORAGEN:  Your Honor, I would be -- if there is --

15  if the Court determines that there is no offer, then under that

16  circumstance I would be constrained to concede that that is a

17  triggering event for the right of first refusal under the

18  partnership agreement.  As the Court's noted, I think that

19  Mr. Dolan and that the plaintiff's argument that there is no

20  offer is wrong and if the Court would indulge me, I'd just like

21  to make sure that the record is clear with regard to our

22  position on that.

23          I think that the fact that the purchase agreement or

24  the offer to purchase says that it can be terminated for any

25  reason or no reason by the purchaser, I mean that is -- has to

ARGUMENT BY MR. RORAGEN

1    be read in the context of the investigation of the property.

2    And what the really -- the significance of is there a reason

3    for terminating under this investigative period provision is

4    does that reason have to be communicated to the seller of the

5    property, in other words, the owner of the property.  And the

6    provision that says purchaser can terminate if it determines

7    for any reason or no reason at all simply is an indication that

8    no reason has to be communicated to the seller of the property

9    if the purchaser determines that the property is unsuitable for

10   purchase.  That doesn't make the offer illusory, it doesn't

11   make the agreement illusory, just the same way that an at-will

12   employment is still a binding offer of employment even though

13   the employer is free to terminate employment at any time for

14   any reason or for no reason.  It doesn't make that contractual

15   arrangement of employment between employer and employee

16   illusory because the employer retains that right.  What that

17   right really is is the right of an employer not to have to tell

18   the employee the reason they're being terminated.  And that's

19   the same thing here.

20          THE COURT:  You've clarified your position.  I'd like

21   Mr. Dolan to repeat in a very brief form why you feel this is

22   not a bona fide offer.  You've already gone over it once but

23   just for the record and for refreshing my memory.

24          MR. DOLAN:  Yes, thank you, Your Honor.  Louis Dolan

25   speaking.

FURTHER ARGUMENT BY MR. DOLAN

1      This is not a bona fide offer because it is an offer

2  that was contrived under the pretense of triggering the right

3  of first refusal.  There was never any intent on the part of

4  the general partner or the third party to enter into a purchase

5  and sale agreement which would be the logical next step to

6  place an --

7      THE COURT:  What in the record supports that

8  conclusion?

9      MR. DOLAN:  That conclusion is supported by virtue of

10  the language that we have just been referring to in the

11  so-called offer to purchase, right, which is not an offer that

12  is capable of acceptance in any meaning or way.

13      THE COURT:  Okay.

14      MR. DOLAN:  It's confirmed by virtue of the exhibits

15  we have attached to our summary judgment papers including, to

16  be very candid and direct with the Court, those communications

17  from Mr. Roragen to his client which have been produced in this

18  case which indicate exactly and precisely the same deficiencies

19  in this particular instrument, whatever you want to call it,

20  because it's not an offer, both with respect to the bona fide

21  nature of it because it is not bona fide in any --

22      THE COURT:  As you --

23      MR. DOLAN:  It is not an offer.

24      THE COURT:  As you may have observed, I don't hesitate

25  to interrupt.  And the interruption this time is to give me an

1  exhibit letter or number that you're referring to.  And take

2  your time.  Take your time.

3         MR. DOLAN:  We are referring to 5.  On the facts of

4  this case the defendant's own counsel agreed that this offer

5  does not meet the requirements of Michigan law because it is

6  not bona fide.  It is, in fact, a ruse designed solely for one

7  purpose.  This is not an instrument whereby the parties are

8  getting together to say we are interested in and considering

9  purchasing your property on one side and on the other side we

10  are interested in selling you our property.  This instrument is

11  a ruse designed for one purpose and one purpose only --

12         THE COURT:  Are you going to answer my question?  What

13  exhibit letter or number is that?

14         MR. DOLAN:  I believe I'm referring to, for example,

15  Exhibit 5.

16         THE COURT:  While you're looking, defense counsel,

17  Mr. Roragen, do you have any dispute with the authenticity of

18  that exhibit?

19         MR. RORAGEN:  Authenticity?  No, Your Honor.  I have a

20  dispute with counsel's characterization of the exhibit but not

21  its authenticity.

22         THE COURT:  Did he read it accurately?

23         MR. RORAGEN:  No, he did not, Your Honor.

24         MR. DOLAN:  I can read it for you now, Judge.  May I

25  read the first sentence of it?

**FURTHER ARGUMENT BY MR. DOLAN**

1      THE COURT:  Yes, please.

2      MR. DOLAN:  I am referring to an email dated Tuesday,

3  April 2nd, 2019, at 6:59 p.m. from Mr. Kevin Roragen to

4  Mr. Ryan Carnegie, right, at his client, and then there are

5  several other recipients as well.  Mr. Roragen writes,

6  "Gentlemen, I have a concern that this LOI" -- that's the

7  instrument we've been talking about.  "I have concern that the

8  LOI does not meet the standard of" --

9      THE COURT:  Wait, we're losing your voice.

10      MR. DOLAN:  I'm sorry?  I'm trying to read --

11      THE COURT:  I understand.

12      MR. DOLAN:  -- from my laptop.  So should I start

13  over?  This is an email from Mr. Roragen --

14      THE COURT:  Wait a minute.  Start from the beginning.

15  What exhibit letter or number is it?

16      MR. DOLAN:  I am referring to our Exhibit Number 5.

17      THE COURT:  Okay.  Thank you.  Go on.

18      MR. DOLAN:  Which is an email from Mr. Roragen to his

19  client and others.  His client's name is Carnegie, on Tuesday,

20  April 2nd, 2019, at 6:59 p.m. which is subject matter Re

21  Bona Fide.  "Gentlemen," and I'm reading from Mr. Roragen's own

22  hand.  "I have a concern that this LOI," instrument we've been

23  talking about --

24      THE COURT:  Let me stop you there.  Is the LOI the

25  Lockwood LOI or does it refer to a prior offer?

1      MR. DOLAN:  It is the Lockwood LOI.  There is only one

2   that has been presented --

3      THE COURT:  Wait, wait, wait.  Now, I once did that at

4   a state Court of Appeals, Mr. Roragen, and was chastised for

5   that.  Mr. Dolan, he was shaking his head as in disagreement.

6   And I was very young and the presiding judge was the chief

7   judge of the Court of Appeals, a -- very intimidating, and he

8   admonished me for doing that and I did it because I wasn't

9   going to get a chance for rebuttal.  And I was so shamed and

10  angry at myself that when the chief judge said at the end of

11  the opposing counsel's presentation, okay, Counsel, now you can

12  go ahead and tell me why you were shaking your head, I had

13  forgotten.  So don't forget.  You'll get a chance to talk.

14      Mr. Dolan, you've had a chance to look and you have

15  now a very strong hint from Mr. Roragen that there was a prior

16  offer, prior to Lockwood's.  But go on, Mr. Dolan.  You may go

17  on.

18      MR. DOLAN:  Thank you.  So, Your Honor, in order --

19      MR. EDEUS:  Your Honor, this is Keith Edeus.  Could I

20  confer with my co-counsel or address the Court just to clarify

21  which exhibits we're talking about?

22      THE COURT:  Yeah, why don't you do that.  You can

23  address the Court, otherwise, it would be hard to justify why

24  you've spent all this time sitting here.

25      MR. EDEUS:  Right.  Your Honor, we're talking about

FURTHER ARGUMENT BY MR. DOLAN

 1   Exhibits 4 and 5 which are emails exchanged between the general
 2   partner and Lockwood.  Exhibit 4 is tendered for the discussion
 3   that the intent of the general partner, and they're very up
 4   front with Lockwood, that they're asking for an offer.  And
 5   while -- and I'm quoting from the -- this is a May 2, 2019
 6   email.  The general partner states to Lockwood, "While Lockwood
 7   is formulating this, I believe we will move forward with
 8   sending the LP, the limited partner, the initial LOI and let
 9   them know another offer might be forthcoming.  Then we will
10   next put the R-O-F-R, the ROFR, to the LP."  So we cite that
11   for the proposition that general partners are advising Lockwood
12   that, in fact, they intend to use this offer as a basis to
13   exercise the ROFR.
14        Then Exhibit 5 is an email that was forwarded by the
15   general partner to Lockwood and it is discussing a prior LOI,
16   and the purpose that's disclosed here in the communication, the
17   purpose in conveying this is to share with Lockwood what that
18   offer needs to look like in order for it to trigger the ROFR.
19   So here we have the general partner coaching -- using the words
20   of their attorney to coach Lockwood as to what constitutes a
21   bona fide offer and, in particular, the binding nature of the
22   offer that's required.  Those, I believe, are the two exhibits
23   that we cited, and I apologize for the interruption but --
24        THE COURT:  No, you're not interrupting.  You're
25   helpful.  But let me ask, was the Number 4 exhibit also given

27

1    to Lockwood?  I missed that.

2         MR. EDEUS:  It was, it was.  These are actually

3    documents that were obtained in discovery from Lockwood, and

4    there's been no objection made to the foundation or the

5    credibility or reliability of these documents.

6         THE COURT:  Mr. Dolan, I'm going to go to Mr. Roragen

7    and see what his response is.

8         MR. DOLAN:  Thank you, Your Honor.  And I do apologize

9    to the Court.  I stand corrected.  My reasoning is the same --

10        THE COURT:  No, Mr. Dolan, it's Mr. Roragen's turn.

11   And I accept your apology.  It probably was not necessary.

12        But go ahead, Mr. Roragen.

13        MR. DOLAN:  Thank you, Your Honor.

14        MR. RORAGEN:  Your Honor, I got a little carried away

15   back there, Your Honor.  I appreciate the -- I appreciate

16   your --

17        THE COURT:  You're lucky I'm not a Scalia strict

18   constructionist.

19        MR. RORAGEN:  Your Honor, my apologies to the Court

20   and to co-counsel.

21        THE COURT:  I don't think you caught if I were a

22   strict language person, I would want you to be put on a

23   pedestal and walked out of the room, carried away.

24        MR. RORAGEN:  Right.

25        THE COURT:  Go ahead.

28

| | |
|---|---|
| 1 | MR. RORAGEN:  Thank you, Your Honor. |
| 2 | I think and I appreciate Mr. Edeus' further |
| 3 | explanation which I think is -- illuminates what was going on |
| 4 | here.  I point out, Your Honor, with regard to Exhibit 4, that |
| 5 | that consists of an email that refers to an initial LOI and |
| 6 | that that initial LOI that's being referred to in that email is |
| 7 | actually attached to the email and is also produced as part of |
| 8 | Exhibit 4.  And that is an LOI that was, letter of intent, that |
| 9 | was actually received from a different entity not from |
| 10 | Lockwood.  It's from a different entity called Michaels, and |
| 11 | the Court can view that for itself but that's part of |
| 12 | Exhibit 4. |
| 13 | Exhibit 5, as Mr. Edeus indicated, is an email, it's |
| 14 | an email thread, and really what's going on with Exhibit 5 is |
| 15 | that my client or representative of one of my client's, |
| 16 | Mr. Carnegie, was forwarding to Mark Lockwood a portion of some |
| 17 | of my advice that I had previously, about a little more than a |
| 18 | month earlier, given to my client in terms of what the standard |
| 19 | of a bona fide offer or my opinion as to that, what that would |
| 20 | entail.  So I think that's what Exhibits 4 and 5 consist of. |
| 21 | I don't know, does the Court want me to further |
| 22 | address the plaintiff's arguments as to the bona fide nature of |
| 23 | the Lockwood offer at this time or would you -- |
| 24 | THE COURT:  No, you may address it, but it's really |
| 25 | closely tied to whether or not there was an offer at all. |

1    MR. RORAGEN:  Understood, Your Honor.  The only thing
2  I would address -- the only thing I would say in addition to
3  what's already been said, Your Honor, is that the plaintiffs
4  cite these two emails as evidence of some steam between
5  Lockwood and -- and the general partners of the partnership.
6  However, I don't think that these emails do evidence that.
7  There's no evidence.  At best I think these emails evidence
8  that Presbyterian was not hiding the fact that it wanted
9  Lockwood to present an offer to the partnership and wasn't
10 hiding the fact that the defendants intended to exercise their
11 purchase rights under the right-of-first-refusal provision in
12 the partnership agreement.
13    There's no -- nothing in these emails or any evidence
14 in the record that shows an intent by Lockwood that Lockwood
15 would not complete the transaction.  I don't know how
16 plaintiffs are arriving at that conclusion.  I do think that
17 this --
18    THE COURT:  What benefit would defendants have if
19 Lockwood did complete the transaction?  If they brought the --
20 well, what benefit, if they had made a valid offer?  Let's
21 start there.
22    MR. RORAGEN:  Well, I think what the Court's asking is
23 what benefit would the defendants have if the purchase proposed
24 by Lockwood had actually been consummated --
25    THE COURT:  Okay, yes.

1          MR. RORAGEN:  That's what I think you're asking, Your

2    Honor.  And the benefit would have been the partnership would

3    have received the purchase price that was proposed,

4    5 million -- five and a quarter million dollars, and those

5    proceeds would have been distributed to the partners including

6    the general partners, my clients.

7          THE COURT:  Okay.  Anything else you want to say about

8    that before we go to the breach in the fiduciary duty argument?

9    Or you -- do we have to even discuss those or are your briefs

10   adequate to discuss those?

11         MR. DOLAN:  Your Honor, this is Louis Dolan.  If the

12   question is directed at me, I'd be happy to address that I

13   think very briefly.

14         THE COURT:  Okay.  Fine.  Go ahead.

15         MR. DOLAN:  Thank you.  And I did not mean to

16   interrupt Mr. Roragen.  But thank you.

17         Judge, we were talking about the requirements for

18   issuance of the right of first refusal and I'm anticipating the

19   Court may be coming close to the end of our time and so I

20   appreciate that.  There's one other key point that I would like

21   to get to on that piece which is the requirement under state

22   law and under the legislative history of Section 42(i)(7) of

23   the Internal Revenue Code that the seller must be a willing

24   seller.

25         So in our view not only do the defendants here not

**FURTHER ARGUMENT BY MR. DOLAN**

1   meet the requirements for a bona fide offer, they do not have a

2   willing seller and that is a very standard provision in

3   Michigan law.  We have cited the cases on that.  It is a

4   standard that has been now picked up in the two federal

5   district courts that have addressed this precise issue under

6   this statutory provision and it is completely missing from the

7   facts of this case.  In fact, the facts of this case establish

8   that my client who owned 99.9 percent of the ownership entity

9   is not a willing seller and we said to the general partner we

10  are not interested in selling.  And that, Your Honor, is a very

11  important line of demarcation or distinction between a right of

12  first refusal which is a conditional right and the conditions

13  are a bona fide offer and willingness of the seller, and an

14  option.

15          This instrument that they are attempting to exercise

16  under is not an option.  They have an option that they could

17  exercise under or could have exercised under at a higher

18  purchase price, admittedly, but instead of doing that, they are

19  trying to get the lower purchase price under their right of

20  first refusal, and not only have they not met the bona fides of

21  the offer or the offer requirement, they also don't have a

22  willing seller.  And the willingness of the seller has been

23  demonstrated in the record and I would cite the Court as one

24  point Exhibit Number 2 which is my February 28, 2019, letter on

25  behalf of my clients to the general partner and also, Your

**FURTHER ARGUMENT BY MR. DOLAN**

1   Honor, respectfully, Section 802 of the partnership agreement

2   which expressly requires the consent of the limited partner,

3   that's my client, for any sale of the property.  So that piece

4   of the equation is also completely missing from any effort here

5   to exercise the right of first refusal.

6         And, Judge, I would say with that we would rely on our

7   papers with respect to the breach of fiduciary duty argument.

8   And thank you for hearing me.

9         THE COURT:  Isn't the question of what -- whether or

10  not the general partners are willing sellers?

11        MR. DOLAN:  Not where there is an express consent

12  provision as there is here in Section 802 and where we own 99.9

13  percent of the entity that owns the property.  We are the

14  so-called majority stakeholder in this and we bargained for

15  consent rights with respect to the sale and we are not at this

16  time nor were we previously prepared to sell the property,

17  therefore, we did not at all fall into the category of a

18  willing seller which is a requirement under Michigan State law

19  as well as Section 42(i)(7) of the Internal Revenue Code.

20        And you may have picked up on Judge Dearie's -- I

21  don't know if you know Judge Dearie, but he's a senior district

22  judge in Brooklyn who ruled on these precise issues in a very

23  similar case in the Eastern District of New York and he

24  actually went, to his credit, a little bit beyond what counsel

25  did and reviewed some of the legislative history behind

FURTHER ARGUMENT BY MR. DOLAN

```
1    Section 42(i)(7).  And in that review, and it's in his opinion
2    and we've cited his opinion, but in that review he says
3    Congress itself literally indicated, and we provided the house
4    report for the legislative history, Congress itself said there
5    has to be a willing seller.  This is a right of first refusal
6    not an option.  And it's important in this case, Your Honor,
7    that --
8          THE COURT:  Is that -- excuse me.  Is that the August
9    decision, Judge Dearie?
10         MR. DOLAN:  I believe that it is.  So he had two
11   decisions --
12         THE COURT:  Wait, wait, wait.  Stop.  Do you know if
13   that has been appealed?  There's --
14         MR. DOLAN:  I do --
15         THE COURT:  You do know?
16         MR. DOLAN:  I do know.
17         THE COURT:  Is it on appeal now?  Because there's no
18   reported follow-up.
19         MR. DOLAN:  Yes.  Yes, Your Honor, it is on appeal.
20   The Notice of Appeal to the United States Court of Appeals for
21   the Second Circuit has been filed.  The initial briefing on
22   that will be -- appellant's brief will be filed, assuming
23   nothing changes, on April 7th.
24         THE COURT:  Okay.  So it won't be argued until the
25   fall probably.
```

34

FURTHER ARGUMENT BY MR. DOLAN

1    MR. DOLAN:  Probably.  And I would guess there will

2    not be a decision on the appeal until probably sometime --

3    THE COURT:  So I can't get out of doing something in

4    this case by saying we'll wait for that case.  I mean I could

5    but it wouldn't be what you guys paid your filing fee for, you

6    know.

7    MR. DOLAN:  I'm afraid that's right, Your Honor.

8    MR. RORAGEN:  That is correct, sir.

9    MR. DOLAN:  I also don't know whether the appeal will

10   address other issues that arose in that case, procedural issues

11   as well, so.

12   THE COURT:  Okay.  Mr. Roragen?

13   MR. RORAGEN:  Yes.  Thank you, Your Honor.

14   I believe the Court's original question had to do with

15   the breach of duty and those claims, and we'll rely on our

16   brief for that.  But I'd like to respond to Mr. Dolan's

17   arguments with -- about a willing seller.

18   First of all, the partnership agreement here is to be

19   interpreted under Michigan law.  Michigan law is quite clear

20   that the provisions of the partnership agreement regardless of

21   what term they use, right of first refusal or option, they have

22   to be interpreted and the rights that the parties have under

23   those agreements, they have to be interpreted according to the

24   terms and conditions that the parties agreed to.  So those

25   provisions control over any common law incidence of a right of

1  first refusal here.  And in this case the only triggering event

2  is the receipt of a bona fide offer.  That's in Section 17.03

3  of the partnership agreement.  And I know that Mr. Dolan and

4  plaintiffs point to provision 8.02 of the partnership agreement

5  which is a provision that generally requires the limited

6  partner's permission or agreement to sell the property, but

7  they conveniently ignore and have ignored throughout this case

8  that Section 8.02 of the partnership agreement, that that

9  provision has a specific carveout for the provisions of

10  Article 17 which are the right of first refusal and the option,

11  the language of the partnership agreement.  This is

12  Article 8.02 subparagraph (b), small B as in boy, that says

13  "except as provided in Article 17, the general partner shall

14  not sell or otherwise dispose of any material portion of the

15  assets of the partnership without the consent of the limited

16  partner."

17        So the concept of a willing seller is not built into

18  this -- to the parties' rights as expressed in the partnership

19  agreement in Section 17 here, and the cases that are referred

20  to, I believe those are the *Risboro* and *AMTRAX* cases, those

21  federal cases, as we point out in our reply brief, Your Honor,

22  and I would just rely on the arguments we made there, that

23  those cases or the holdings in those cases actually support our

24  position that if you interpret the provisions of the

25  partnership agreement that the right of purchase here that's

1    provided for in that partnership agreement was validly

2    exercised.

3              Thank you, Your Honor.

4              THE COURT:  Okay.  Any last words, Mr. Dolan?

5              MR. DOLAN:  Thank you, Your Honor.  I would again draw

6    the Court's attention to Judge Dearie's well-reasoned opinion

7    in the *Risboro* decision in which he effectively says that

8    because this contract or statutory provision interprets a

9    well-known, well-regarded term of art, that being right of

10   first refusal, that necessarily carries with it the common law

11   requirements associated with that which include willingness of

12   seller.

13             THE COURT:  Okay.  Lexis says that the appeal was

14   decided on December 23rd of Judge Dearie's decision.  How is

15   that -- is Lexis wrong?

16             MR. DOLAN:  If the -- I'm sorry.  I'm not sure I

17   understand your question, Your Honor.  If the appeal were

18   terminated?

19             THE COURT:  Yeah.  Lexis says on December 23rd.

20             MR. DOLAN:  Then I think that the judicial effect of

21   that would be that --

22             THE COURT:  No, no.  Factually that the dates you gave

23   me were probably from a briefing letter from the Court saying

24   your brief is due, et cetera, which was probably sent before

25   December 23rd.  And if my law clerk tells me that Lexis says

37

```
 1   that it was terminated December 23rd, then it's a very good

 2   thing that I didn't hold this in abeyance until that was

 3   decided --

 4            MR. DOLAN:  Your Honor --

 5            THE COURT:  In the words of a famous song, "the

 6   twelfth of never."

 7            MR. DOLAN:  Your Honor, here's what I can tell you

 8   about that from personal knowledge which is that the appeal has

 9   been docketed before the Second Circuit.

10            THE COURT:  Okay.

11            MR. DOLAN:  It just recently received a briefing

12   schedule whereby the other party, the party that lost in the

13   trial court before Judge Dearie, has their appellant's brief

14   due to be filed with the Second Circuit on April 7th.

15            THE COURT:  What was the date of that letter?  Do you

16   know?

17            MR. DOLAN:  I don't have that in front of me, but it's

18   been within -- I believe it's correct to say it's been within

19   the last perhaps ten day, two weeks, something like that.

20            THE COURT:  So it was after the 23rd.  So Lexis may

21   have been mistaken or maybe it was reinstated?  Be that as it

22   may, we'll get you a decision within 60 days.

23            MR. DOLAN:  Thank you, Your Honor.

24            MR. RORAGEN:  Thank you, Your Honor.

25            THE COURT:  Yes.  That's an enforceable offer.
```

**MOTION TAKEN UNDER ADVISEMENT**

1      MR. DOLAN:  Thank you, Judge.

2      THE COURT:  Both doing -- all three of you and you've

3  been very helpful.  It's not an easy case legally.  Factually

4  it's probably not such a hard case.  Thank you both, and all

5  three.

6      MR. DOLAN:  Thank you.

7      MR. RORAGEN:  Thank you, Your Honor.

8    (Proceedings concluded, 2:25 p.m.)

9                        -   -   -

10                CERTIFICATION OF REPORTER

11

12    I, Leann S. Lizza, do hereby certify that the above-entitled

13  matter was taken before me remotely via videoconference at the

14  time and place hereinbefore set forth; that the proceedings

15  were duly recorded by me stenographically and reduced to

16  computer transcription; that this is a true, full and correct

17  transcript of my stenographic notes so taken; and that I am not

18  related to, nor of counsel to either party, nor interested in

19  the event of this cause.

20

21

22  S/Leann S. Lizza_____       3-24-2021

23  Leann S. Lizza, CSR-3746, RPR, CRR, RMR, RDR     Date

24

25

**SUNAMERICA v. PATHWAY OF PONTIAC, ET AL., 19-11783**